## MERCHANTS INS. CO. v. LILGEOMONT, INC.

## FIREMAN'S FUND INS. CO. v. SAME.

## NEW BRUNSWICK FIRE INS. CO. v. SAME.

Nos. 7980–7982.

Circuit Court of Appeals, Fifth Circuit.

July 10, 1936.

Alex W. Smith, Jr., of Atlanta, Ga., for appellant.

B. P. Gambrell and Reuben R. Arnold, both of Atlanta, Ga., for appellees.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

On August 7, 1932, a fire destroyed a residence and its contents allegedly owned by Lilgeomont, Inc., and separate suits on three policies of insurance were brought by the corporation in a state court of Georgia. After removal to the District Court they were tried together, resulting in verdicts for the plaintiff. The three appeals and cross-appeals involve the same questions, and will be disposed of by one opinion.

Each policy contains these provisions: "The insured as often as required shall exhibit to any person designated by the Company all that remains of any property herein described, and submit to examination under oath by any person named by this Company, and subscribe the same; and as often as required shall produce for examination all books of account, etc." "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements." Pleas styling themselves pleas in abatement set up these provisions, and that Mrs. Burnise W. Morris as president of insured was required to submit to examination and to produce insured's books of accounts, but produced no such books and refused to answer numerous questions alleged to be material. The pleas conclude that "No suit or action on said policy of insurance for the recovery of any claim on account of any loss or damage to

the subject of insurance is sustainable, and this suit should be abated." A jury trial was had on these pleas in which Mrs. Morris explained that the corporation, owned by herself alone, had no books of account, not even a bank account, except a memorandum book of cash transactions which was destroyed by the fire, and that her refusals to answer in each instance were because she did not know or remember the facts inquired about or believed them not material. She in the trial answered fully as far as her knowledge or memory went on all these matters ruled relevant by the court. The jury under the court's instructions found that there had been no breach of the policy provision and found against the pleas.

The answers admitted a total loss, but denied that the value of the property equaled the insurance. They specially set up that L. M. Morris, the husband of Burnise W. Morris, was the equitable owner of the property and in complete control of Lilgeomont, Inc., and had hired one Shirley to burn it. They repleaded the policy provision first above quoted and its breach as a bar to recovery, and also pleaded this further provision: "This entire policy shall be void if the insured has concealed or misrepresented in writing or otherwise any matter, fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss"; and claimed its breach by the same refusals of Mrs. Morris to produce books of account and to answer questions. On the trial of the answers before another jury, the evidence being in substance the same as on the trial of the pleas in abatement touching the refusal to produce books and to answer questions, the court withdrew from the jury as being already adjudicated the question of a breach of the first quoted provision of the policy, but let the jury pass on the question under all the evidence whether there was fraud by concealment or false swearing under the last quoted provision. The remaining issues were also submitted. The jury found for the plaintiff.

■ In the trial of the pleas in abatement error is assigned on the refusal to direct a verdict for the insurer and because of a ruling on evidence and a charge given. It is urged by appellee that these assignments cannot be considered because of 28 U.S.C. A. § 879: "There shall be no reversal in the Supreme Court or in a circuit court of appeals upon a writ of error, for error in ruling any plea in abatement, other than a plea to the jurisdiction of the court, or for any error in fact." The authorities construing and applying the section were recently reviewed in McHie v. McHie (C.C. A.) 78 F.(2d) 351, and it was held that a judgment sustaining a plea of another suit pending was not reviewable. One of the cases cited is Stephens v. Monongahela Bank, 111 U.S. 197, 4 S.Ct. 336, 28 L.Ed. 399, in which such a plea was overruled, the merits decided and a judgment given for the plaintiffs as in the present case. The Supreme Court because of the quoted section refused to consider the ruling on the plea in abatement, saying: "The defense is one which merely defeats the present proceeding, and does not conclude the plaintiff forever, either as to his right to sue in the circuit court of the United States or as to the merits of the matter in dispute." On the other hand, in Fitzpatrick v. Flannagan, 106 U.S. 648, 1 S.Ct. 369, 27 L.Ed. 211, a ruling on a plea in abatement was, without allusion to the section, passed on and reversed. The plea, however, dealt with the sufficiency of the affidavit on which the attachment issued which began the suit, and seems to have involved not only the getting of the defendant properly into court but the validity of certain garnishments and perhaps of an attachment lien, and thus to have been more than a pure plea in abatement. In the present case, while the prayers of the pleas are to abate the suit, there is the allegation of an unfulfilled condition precedent and a claim in the pleas that no recovery is sustainable. The failure to perform a condition precedent may sometimes be made a cause for abatement and it may sometimes go to the extinction of the cause of action. 1 Corpus Juris Secundum, Abatement, § 86. On the trial of the merits the court gave conclusive effect to the verdict on the pleas in abatement and we think that we should look into its correctness. The statute indeed prohibits only a reversal, and we shall not reverse.

■ The contractual provision for discovery of books and papers and of material facts known to the insured is reasonable and valid. Claflin v. Commonwealth Ins. Co., 110 U.S. 81, 3 S.Ct. 507,

28 L.Ed. 76; Firemen's Fund Ins. Co. v. Sims, 115 Ga. 939, 42 S.E. 269. The result of a refusal is another question. When the parties do not agree what the result shall be, provisions looking to the ascertainment of the truth after a loss have sometimes been treated as promissory warranties whose breach invalidates the insurance, and sometimes only as agreements to be appropriately specifically enforced. See Travelers Ins. Co. v. Welch (C.C.A.) 82 F.(2d) 799, and cases cited. In the Claflin Case, supra, the agreement which was enforced was that an attempt at false swearing or fraud should forfeit all claim and bar recovery. In the Firemen's Fund Ins. Company Case, supra, the agreement was like that now before us, that no suit shall be maintained until compliance. Likewise in Southern Home Ins. Co. v. Putnal, 57 Fla. 199, 49 So. 922. Under such an agreement there is no avoidance of the policy on a failure to comply. The fair construction is that the suspension of the right to sue is for the enforcement of the right to a discovery, and when the latter right is secured the right to sue is restored. If an insured willfully and without excuse refuses discovery, an insurer may refuse to go forward with an adjustment and claim immunity from suit; but here the insured could not produce books of account which did not exist, and she answered hundreds of questions, refusing to answer only a few. These refusals were repaired to the extent of her ability when testifying in this preliminary trial in court. The judge committed no error in permitting her to explain why she had refused to answer before and in letting the jury pass on the sufficiency of her excuse. She should when first interrogated have said she did not know or could not remember, when that was the fact, instead of refusing to answer, for the insurer was entitled to know the true state of her knowledge and not to be misled by what looked like an attitude of obstinacy and concealment. When, however, she told in court all there was to tell, and there was no surprise or unpreparedness to go forward claimed by the insurer, it seems to us that the agreement about discovery was substantially fulfilled and that it is not required that this suit be abated and that the insured repeat the discovery out of court and then sue again if legal and contractual limitations permit. In this view if there was any error in the judge's charge it was not against the insurer. The jury could rightly find that there was no present contractual obstacle to the maintenance of the suit. The recovery of attorney's fees and statutory damages for a wrongful defense was denied, so no question arises of the bearing on that liability of the refusal to discover before suit.

■ We pass to the trial of the merits. The provision about fraud or false swearing before or after loss states that the policy shall be voided thereby. The judge fully submitted to the jury whether there was an intentional concealment amounting to fraud or a false swearing, and instructed them that either would defeat the policy. His withdrawal from them of the issue about the mere refusal of discovery, because adjudicated under the plea in abatement, was correct. Moreover, the answer pleaded breach of the policy provision about that as voiding the policy, whereas the agreement in the policy was that it had no such effect, but only to suspend suit until compliance. Several of the requested charges confused these two policy stipulations, and were properly refused for that reason. Other requests were given in substance. The requested charges touching constructive frauds consistent with innocence were properly refused because only willful fraud and false swearing are intended to be made grounds for forfeiture of the insurance. The request enumerating the badges of fraud which are usually applied in transactions claimed to be in fraud of creditors was properly refused. Such badges are not the appropriate tests in the issues here on trial, and several of them were not supported by any evidence.

■ Other assigned errors relate to the alleged arson. There was direct evidence, though strongly denied and apparently not very trustworthy, that L. M. Morris hired Shirley to burn the house. If an insured procure the burning of the insured property, he cannot recover because his act is a fraud and no one can take advantage of his own wrong. The insured here is a corporation, and could burn its property only through an officer or agent authorized to act for it. Mrs. Morris, its president and sole owner, no doubt by her act or authorization could defeat the insurance by a fraudulent fire. There is no evidence whatever against her of such act or any collusion. Mr. Morris in his character of husband does not in Georgia at all represent his wife touching her property. He held no office and owned no stock in Lilgeomont,

Inc., at the time of the fire. He often transacted special business for it but had no formal authority. He will get no part of the insurance if paid. The evidence is that he and his wife together bought the lots, putting the title in her name, and built the burned home in 1922. Lilgeomont, Inc., was chartered in 1930 to do a real estate business, and the home and some other lots were conveyed to it, but no trading was ever done. Morris at first had two of the forty shares of stock, but soon after gave them to his wife. He bought the furniture, but the evidence is that it also was transferred to the corporation. The three-year insurance policies were taken out in 1930, that on the house in the name of Mrs. Morris and one on the furniture in the name of Mr. Morris, but all were changed to the corporation several months before the fire. A loan on the house was due, but could be renewed. Morris had a suit pending against him and had let some property go for the mortgage on it, but he had other individual property and an income of four to five hundred dollars per month. His reputation is good; that of Shirley is bad, and Shirley admits expecting a reward from the insurance companies. We find nothing to show that Morris had any financial interest in the insurance. The putting the home in his wife's name originally and the furniture in the name of the corporation solely owned by her is under Georgia law presumably a gift to her and raises no constructive trust for his benefit. Code of 1933, § 108-116. The testimony is that there were no side agreements or interests reserved in him. But if he be interested in some way in the corporation and in the insurance, but is not the only one interested, his fraud would not defeat the insurance, because of the interest of innocent persons. Fidelity-Phenix Fire Ins. Co. v. Queen City Bus & Transfer Co. (C.C.A.) 3 F.(2d) 784. The insurers' remedy would be to sue Morris for his wrongful act by virtue of subrogation to the insured's right. The jury were correctly charged as to this point, and as to the necessity of authority from the corporation to bind it by such an act. The requested charges were either substantially covered or were objectionable as worded. The evidence does not justify a belief that the insurance was taken out and the corporation formed two years before the fire under a plan for a fraudulent fire, and the requested charge based on that theory was unwarranted. The jury probably found that there was no arson at all.

█ The verdicts are for the face of the policies and for named sums as additional damages in lieu of interest, being in fact 7 per cent. interest. The charge permitting the award of this interest or damages is excepted to. In Concordia Ins. Co. v. School District, 282 U.S. 545, 554, 51 S. Ct. 275, 75 L.Ed. 528, it was held that the matter of interest on fire insurance is controlled by the statute of the forum and its construction by the state court, but that in the absence thereof the federal court may in the exercise of a sound discretion include interest or its equivalent as an element of damages. The statutes of Georgia are Code of 1933, § 57-110: "Liquidated demands, where by agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party shall become liable and bound to pay them; if payable on demand, from the time of the demand." And section 20-1408: "In all cases where an amount ascertained would be the damages at the time of the breach, it may be increased by the addition of legal interest from that time until the recovery." These policies "insure against all direct loss or damage by fire to an amount not exceeding" named sums. They are not themselves liquidated demands, nor is there originally any amount ascertained payable under them. The process of adjustment may result in the ascertainment of the amount of loss, though liability be denied. When that happens interest may be recovered when liability is established. Sentinel Fire Ins. Co. v. McRoberts, 50 Ga.App. 732, 743(4), 179 S.E. 256. National Fire Ins. Co. v. Thompson, 51 Ga.App. 625(3), 181 S.E. 101. When there is no such fixing of the amount but it is in substantial dispute, interest or increased damages in lieu of interest cannot be recovered. Ins. Co. of North America v. Folds, 42 Ga.App. 306(4), 155 S.E. 782; Firemen's Ins. Co. v. Oliver, 182 Ga. ——, 184 S.E. 858. In the case before us the proofs of loss show a claimed loss exceeding on each item the face of the policy. There was, however, no agreement touching the amount of the loss. In the attempted discovery from Mrs. Morris there was much contention over it. The answers in the suits all deny the allegations of a loss exceeding the face of the policies. On the trial the plaintiff's evidence of values was extensive, and contested by elaborate cross-

690

examination. Although the defendant offered no rebutting evidence, there is no indication of a concession that the face of the policies was due if the special defenses should fail. The judge in his charge said: "So if you find that none of the special defenses of defendants is good, then you come to the main contention in the case, that is, What is due the plaintiffs under the policies?" There was thus no ascertainment or liquidation of the amount payable until the jury fixed it, and under the Georgia decisions referred to no interest before judgment was recoverable. It must be and is written off. There being thus a substantial modification of the judgment, costs of the appeal are allowed the appellants, but as modified the judgments are affirmed.