The **LUMBERMENS MUTUAL INSUR-ANCE COMPANY OF MANSFIELD, OHIO,** Appellant & Cross-Appellee,

v.

**CANTEX MANUFACTURING COMPA-NY,** Appellee & Cross-Appellant.

**CANTEX MANUFACTURING COMPA-NY,** Appellee & Cross-Appellant,

v.

The **LUMBERMENS MUTUAL INSUR-ANCE COMPANY OF MANSFIELD, OHIO,** Appellant & Cross-Appellee.

No. 17276.

United States Court of Appeals
Fifth Circuit.

Nov. 19, 1958.

Edward L. Savell, Atlanta, Ga., Woodruff, Latimer & Savell, Atlanta, Ga., for appellant.

Hugh M. Dorsey, Jr., Atlanta, Ga., Jones, Williams, Dorsey & Kane, Atlanta, Ga., of counsel, for appellee.

Before RIVES, TUTTLE and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

Defendant insurance company is here appealing from a judgment rendered on a jury verdict awarding plaintiff recovery for certain items destroyed by fire in the destruction of plaintiff's factory. Defendant's defense to the claim, and its theory on appeal, is that these items were not covered by the terms: "the insured's interest in improvements and betterments" on a building in Canton, Georgia, which was leased by plaintiff for use as a corduroy finishing plant. Defendant contends that the items in question, which included boilers, water coolers, and lint removal and ventilation systems, were not "improvements or betterments" because plaintiff had the right, either by virtue of the express terms of its lease, or by the common law relating to trade fixtures, to remove them at the termination of the lease. Defendant raised the issue by timely motions for directed verdict, judgment N.O.V., and new trial, all of which were denied.

Federal jurisdiction in this case is based on diversity of citizenship, and questions of substantive law are controlled by Georgia law. However, the precise issue raised by this defense has not been passed on heretofore by any Georgia court.

That issue is whether installations by a tenant which are of such nature that they would become a permanent part of the realty but for (1) the law permitting the removal of trade fixtures, or (2) the terms of the lease permitting their removal are "improvements and betterments on the building" within the contemplation of the policy. If they are, then this resolves the main question on appeal.

The jury found that items having a value in excess of the coverage of the policy were improvements and betterments. It did so under a charge of the court that in effect said that if the items were removable either because they were trade fixtures or because they came within the terms of the lease,[1] then they were not "improvements and betterments." Appellant complains of certain parts of the charge as not correctly defining trade

---

1. "At the termination of this lease, lessee [that is the plaintiff] may if not in default in the performance of any of its obligations under this lease remove all machinery, machinery and equipment installed by them in said building, other than equipment or improvements which have become a part of the basic building structure, or a part of the electrical, plumbing, or drainage systems of the building."

fixtures. We think it unnecessary to resolve these questions, because we agree with appellee that the test applied by the trial court was more favorable to appellant than was warranted. This is so, because we conclude that whether or not attachments to realty are improvements or betterments is not to be determined by the privilege the tenant has to detach them at the end of his term, but rather by the nature of the attachments and their permanency.

 The words of the policy "improvements and betterments on the building" are not words of art. They are not even part of the printed portions of the policy. As is true in the construction of all contracts, these words are to be given their usual and ordinary meaning. If the jury found therefore, as they must have under the charge of the court, that all of the items involved were so affixed as to become part of the realty but for the application of the trade fixture rule or the lease provision, then, in the ordinary meaning of the words, these were improvements to the property. Unless the Georgia courts have held that items that fall within the definition of trade fixtures cannot be improvements, therefore, it seems clear that they would nonetheless be improvements even though they might also be removable as trade fixtures.

Not only are no cases cited to that effect, but Armour & Co. v. Block, 147 Ga. 639, 95 S.E. 228, cited by appellant, seems to imply the contrary. In that case the court used the term "trade fixture" interchangeably with the term "improvement" in speaking of a smokehouse, the construction of which of a permanent nature had all the attributes of an addition to the realty. See also Bronson on Fixtures, Sec. 31, p. 173.

The only case cited by either party in which this precise language has been construed and applied with respect to removable items is Modern Music Shop v. Concordia Fire Ins. Co., 131 Misc. 305, 226 N.Y.S. 630, 633. Although it is a decision of the Municipal Court of New York City, the reasoning of that case warrants our consideration. There the

lease required that the betterments and improvements be removed by the tenant. Nevertheless the court held:

"The words 'betterments' and 'improvements' are terms of elasticity, and are really synonyms, being words of the same or like meaning. To 'better' is in fact to improve, and to 'improve' is to make better. As they are used in the policy, I think these words imply and mean a substantial or fairly substantial alteration, addition, or change to the premises used and occupied by the assured, rising above and beyond and amounting to something more than a simple or minor repair. And I hold that the nature of the work done in converting the basement into a display room, in the manner proved, brings it within that category, and that it was of the kind and character contemplated by this language of the policy, and is within the fair intendment of its terms. These terms, I think, mean to insure those alterations, additions, or changes made by the assured to that part of the realty used and occupied by him for and in the conduct of his business."

 We conclude that the insured's right to remove property is irrelevant where, as here, the property has been annexed to the realty in a substantial way, even though it may not have been made an integral part of the realty or otherwise lost its identity.

We do not agree with appellant's contention, for which it cites no authority, that in a suit such as this one between the insurer and the lessee-insured, "the insurer necessarily stands in the tenant's shoes," with the result that "the provisions of the lease determine the legal status of the items insured." We agree, rather, with appellee's argument that in this case the insurer is more in the position of a third party to the lease, such as a condemnor, whose obligations to the tenant are determined, not by the rights of the tenant vis-à-vis its landlord, but by an objective fact: the mode of annexation of the property as of the time

of the loss.[2] Therefore, if at the time of the loss, the article is annexed to the realty, it qualifies as an "improvement or betterment," despite the fact that the insured might have had a right to remove it later on if it had not been destroyed.[3]

■ Appellant asserts that appellee is foreclosed from arguing this point by its failure to appeal from the pre-trial order which ruled that trade fixtures were not covered by the policy, and by its failure to specify the court's ruling in its motion for new trial or its specification of errors on appeal. The pre-trial order was an interlocutory order, hence non-appealable, 28 U.S.C.A. §§ 1291, 1292; 3 Moore's Federal Practice ¶ 16.21, and therefore did not, as appellant maintains it did, establish the "rule of the case." Nor was appellee, in addition to raising the point below, required to specify it as error on appeal. Rule 24, subd. 3, Rules of the U. S. Court of Appeals for the Fifth Circuit, 28 U.S.C.A.

We have carefully considered the other arguments made by appellant but find that they are without merit.

On cross-appeal, plaintiff assigns three errors, two concerning the allowance of punitive damages and attorneys' fees and one concerning the date from which interest on the judgment should run.

■ By an amendment to its complaint, plaintiff sought to recover 25 per cent. of the amount recovered under the insurance policy as damages, plus reasonable attorneys' fees. This is provided for by the Georgia Code in cases of bad faith refusals to pay insurance claims. Ga. Code Ann. § 56–706. Plaintiff maintains it was error for the trial court to exclude certain evidence bearing on the question of bad faith and to refuse to submit the question of bad faith to the jury on the ground that plaintiff had not made out a prima facie case. The gist of plaintiff's argument is that, while the parties were negotiating, defendant refused to inform plaintiff of what items it admitted were improvements, and thus deprived plaintiff of "an opportunity to agree with the Defendant with respect to items as to which no real dispute existed."

We agree with the court below in holding that where, as here, there is a reasonable doubt as to coverage of certain items, the insurer is not required to disclose or offer to pay for items which it concedes

---

2. See United States v. Seagren, 60 App. D.C. 183, 50 F.2d 333, 335, 75 A.L.R. 1491, where the court stated:

"And so the agreement for removal made by these parties at another time, for another purpose, and affecting no interests but their own, must be rejected here as irrelevant, when set up by the United States to control its condemnation proceedings against the tenant's interest in the land.

\* \* \* \* \*

"We find the controlling rule well stated in Nicholas on Eminent Domain: 'It frequently happens that, in the case of a lease for a long term of years, the tenant erects buildings upon the leased land or puts fixtures into the building for his own use. It is well settled that, even if the buildings or fixtures are attached to the real estate and would pass with conveyance of the land, as between landlord and tenant they remain personal property, and, in the absence of special agreement to the contrary, may be removed by the tenant at any time during the continuation of the lease provided such removal may be made without injury to the freehold. *This rule is however entirely for the protection of the tenant and cannot be invoked · by the condemning party.* If the buildings or fixtures are attached to the real estate, they must be treated as real estate in determining the total award, but in apportioning the award they are treated as personal property and credited to the tenant.' Nicholas on Eminent Domain (2d Ed.) vol. 1, § 234." (Emphasis added.)

3. If anything, the fact that the insured installed it at its own expense and for its own use, and had the right to remove it at the end of its lease, would seem to *increase* the value of its *interest* in the improvement from a mere "use value" to full replacement cost value. See Modern Music Shop v. Concordia Fire Ins. Co., supra, where the tenant-insured had not just the right, but the duty, to remove the improvements at the end of its lease. However, this is not important here because loss figured at the use value exceeded the amount of the coverage.

are covered unless it obtains a release as to the disputed items. During the negotiations prior to the initiation of this action, defendant made a settlement offer of $35,000. To require the insurer to make such a payment without obtaining a release as to the balance of the claim would be to make an unwarranted interference with the bargaining rights of a party who had, as we said, a bona fide objection to paying for some doubtful items.

This conclusion is not in conflict with Employers' Liability Assur. Corporation v. Manget Bros. Co., 45 Ga.App. 721, 165 S.E. 770, cited by plaintiff. That case differs from this one in several respects, including the fact that the insurer there never made *any* offer in response to the plaintiff's request, which also differed from plaintiff's request in the instant case, because it asked for a settlement offer. Nor is our conclusion in conflict with Jackson v. Motors Insurance Corp., 97 Ga.App. 658, 104 S.E.2d 253. We agree with the rule, stated therein, that the question of good faith is ordinarily one for the jury. Here, however, there was no prima facie showing that would have authorized such a submission. See Hanover Fire Ins. Co. of New York v. Argo, 5 Cir., 251 F.2d 80.

Since it is conceded that if the trial court was correct in taking the question of bad faith away from the jury then its exclusion of the correspondence offered in evidence by plaintiff was also correct, we hold there was no error in the latter respect either.

■■ Plaintiff's other assignment of error concerns the date from which interest on the judgment should run. The court awarded interest on $31,369.97 from March 29, 1957, the date on which defendant filed its interrogatory answer admitting this sum to be due, and allowed interest on the remainder of the judgment from the date of the jury verdict. Plaintiff contends the court should have awarded interest on the entire award from October 26, 1955, on the ground that it had become a liquidated claim on that date, when the adjuster representing defendant filed a report with defendant, in which he expressed his belief in the accuracy of plaintiff's estimates of replacement costs of the destroyed property. The adjuster also suggested applying an use value formula to determine the value of plaintiff's interest therein.

Plaintiff contends this brings the case within the rule referred to in Merchants Ins. Co. v. Lilgeomont, Inc., 5 Cir., 84 F.2d 685, 689, which provides for payment of interest from the time when there is "ascertainment of the amount of the loss, though liability be denied." However, the adjuster appears to have been an independent agent, and plaintiff has failed to prove that defendant then adopted his proposed figures or formula. Hence it cannot be said that the claim was liquidated as of that time. It appears from the record, however, that when defendant filed the aforementioned interrogatory answer it admitted the amount of plaintiff's loss as to the contested items, and denied only that there was liability for them under the policy. Although plaintiff was still contending that for certain of the items its interest was more than the mere use value admitted by defendant, this did not prevent the amount of the use value from being an admitted and liquidated amount. Cf. Firemen's Ins. Co. v. Oliver, 53 Ga.App. 638, 186 S.E. 706, affirmed 182 Ga. 212, 184 S.E. 858. Liquidation of a claim may be achieved by agreement of the parties, but that is not the only method. Ga.Code Ann. § 57–110. We think this amounted to a liquidation of the entire amount ultimately recovered, and conclude that interest on the entire amount should have been allowed from March 29, 1957.

■ Plaintiff has also argued that interest should be awarded on $35,000.00, or at least $31,569.97, from the date when suit was filed, in view of the fact that defendant's answer to the amended complaint stated that it offered $35,000.00 in settlement of the claim prior to the filing of suit. We agree with defendant's reply that a settlement offer is an offer to compromise disputed issues and is not a liquidation of a claim unless it is accepted.

Plaintiff relies on Firemen's Ins. Co. v. Oliver, supra, which awarded interest in full settlement of a claim. It appears, however, that in the cited case the insurer admitted liability, and the court regarded the offer as a statement of what it thought was the full amount of the claimant's loss and not as an offer of compromise. Thus the court treated it as an admission of an amount due, hence a liquidated amount. We do not think the decision in that case is controlling here.

The judgment is affirmed on the appeal. On the cross-appeal it must be modified by the allowance of interest on the entire amount from March 29, 1957. To permit the modification the judgment is remanded to the trial court.