PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LARRY S. HYMAN, as Liquidating
Trustee of Governmental Risk
Insurance Trust,
  *Plaintiff-Appellant,*

v.

CITY OF GASTONIA,
  *Defendant-Appellee.*

No. 05-1981

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CA-04-523-3)

Argued: May 22, 2006

Decided: October 16, 2006

Before WILLIAMS and GREGORY, Circuit Judges, and
Henry F. FLOYD, United States District Judge
for the District of South Carolina, sitting by designation.

---

Dismissed by published opinion. Judge Williams wrote the opinion,
in which Judge Gregory and Judge Floyd joined.

---

## COUNSEL

**ARGUED:** Lee S. Haramis, GRAY ROBINSON, P.A., Jacksonville,
Florida, for Appellant. Josephine Herring Hicks, PARKER, POE,
ADAMS & BERNSTEIN, L.L.P., Charlotte, North Carolina, for

Appellee. **ON BRIEF:** Daniel A. Nicholas, GRAY ROBINSON, P.A., Jacksonville, Florida, for Appellant. Richard J. Rivera, PARKER, POE, ADAMS & BERNSTEIN, L.L.P., Charlotte, North Carolina, for Appellee.

---

## OPINION

WILLIAMS, Circuit Judge:

Larry S. Hyman, the Liquidating Trustee for the Governmental Risk Insurance Trust (GRIT), appeals the district court's application of North Carolina's doctrine of abatement, which resulted in the dismissal of GRIT's diversity action against the City of Gastonia, North Carolina (Gastonia). For the reasons that follow, we dismiss the appeal for lack of jurisdiction.

I.

GRIT is a workers' compensation self-insurance fund that was formed to provide workers' compensation insurance to governmental entities. Gastonia entered into a contract with GRIT for GRIT to provide workers' compensation insurance in exchange for premiums that Gastonia paid to GRIT. The contract was in effect until March 2000, when GRIT filed for bankruptcy.

In November 2002, GRIT sued Gastonia in Florida state court under various state-law contract theories alleging that Gastonia owed it $701,431.52 in unpaid premiums. Gastonia removed the case to the United States District Court for the Middle District of Florida based on diversity of citizenship. *See* 28 U.S.C.A. § 1441 (West 1994 & Supp. 2006); § 1332 (West 1993). After removing the case, Gastonia filed a motion to dismiss arguing, inter alia, that venue was improper, *see* Fed. R. Civ. P. 12(b)(3), that service of process was insufficient, *see* Fed. R. Civ. P. 12(b)(5), and that the complaint failed to state a claim upon which relief could be granted, *see* Fed. R. Civ. P. 12(b)(6), because the statute of limitations had run. The Florida district court agreed that venue was improper and transferred the case to the United States District Court for the Western District of North Car-

olina. Thereafter, the North Carolina district court granted Gastonia's Rule 12(b)(5) motion to dismiss for insufficient service of process and dismissed the action without prejudice.[1] *See* Fed. R. Civ. P. 41(b) ("For failure of the plaintiff to prosecute or to comply with [the Federal Rules of Civil Procedure] or any order of the court, a defendant may move for dismissal of an action . . . ."). GRIT appealed the district court's dismissal. *Hyman v. City of Gastonia* (*Hyman I*), 137 F. App'x 536 (4th Cir. 2005) (unpublished).

While GRIT's appeal in *Hyman I* was pending in this court, GRIT filed a second diversity action (*Hyman II*) against Gastonia in the same North Carolina district court, this time properly effecting service. GRIT's second action set forth the same claims, involved the same transactions and occurrences, and sought relief identical to that sought in GRIT's first action. Indeed, as GRIT candidly admits, *Hyman II* is the "same cause of action" as *Hyman I*. (Appellant's Br. at 21.) Gastonia moved under Rule 12(b)(6) to dismiss *Hyman II*, arguing that the complaint failed to state a claim upon which relief could be granted because it was subject to dismissal under North Carolina's doctrine of abatement. Under this doctrine, a defendant may assert, as an affirmative defense requiring dismissal, that a substantially identical, earlier-filed action is pending on appeal. *Clark v. Craven Reg'l Med. Auth.*, 387 S.E.2d 168, 171 (N.C. 1990).

On February 7, 2005, the North Carolina district court granted Gastonia's motion, holding that this was "a classic case for application of the doctrine of abatement" under North Carolina law. (J.A. at 340.) On May 23, 2005, we affirmed the district court's dismissal in *Hyman I*. 137 F. App'x at 537. The district court granted GRIT leave to file an out-of-time notice of appeal in *Hyman II*, and on August 18, 2005, GRIT filed its notice of appeal.

---

[1] GRIT's service of process was improper because GRIT failed to deliver the summons and complaint to the appropriate Gastonia officials.

## II.

### A.

GRIT primarily argues that the district court erred in dismissing *Hyman II* because application of North Carolina's doctrine of abatement is inconsistent with the district court's Rule 41(b) without-prejudice dismissal of *Hyman I* and, under *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), Rule 41(b), not North Carolina's doctrine of abatement, should apply.

We have an obligation to inquire into jurisdictional issues *sua sponte. Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 304 (4th Cir. 2006). Therefore, after we heard oral argument in this case, we directed the parties to submit supplemental briefs on whether we have the authority to consider Hyman's appeal in light of 28 U.S.C.A. § 2105 (West 1994) ("There shall be no reversal in the Supreme Court or a court of appeals for error in ruling upon matters in abatement which do not involve jurisdiction.").[2]

We now conclude that we lack jurisdiction to hear Hyman's appeal because the district court dismissed this case under North Carolina's doctrine of abatement. Although § 2105 has existed, with slightly different wording, since the Judiciary Act of 1789, *see Stephens v. Monongahela Nat. Bank*, 111 U.S. 197 (1884), there have been few applications of this statute, and we have no relevant precedents interpreting its provisions.[3] Nevertheless, we conclude that § 2105 bars our

---

[2]We note that because this appeal involves a final decision of the district court to dismiss GRIT's suit under North Carolina's doctrine of abatement, 28 U.S.C.A. § 1291 (West 1993) would allow for our review. *See id.* ("The court of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts . . . ."). Jurisdiction over this appeal is not conferred, however, if another statute bars appellate review.

[3]An earlier version of 28 U.S.C.A. § 2105 (West 1994) prohibited reversals for errors in a district court's findings of fact, and this provision was cited in *Virginian Ry. Co. v. Armentrout*, 166 F.2d 400, 408 (4th Cir. 1948). Section 2105 no longer includes such language. *Luxenberg v. United States*, 45 F.2d 497 (4th Cir. 1930), held that § 2105 applies to criminal trials, but the Supreme Court reversed *Luxenberg* in *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21 (1943) (holding that § 2105 is inapplicable to criminal trials).

consideration of this appeal because (1) the district court's abatement ruling falls within the strictures of § 2105 as interpreted by the Supreme Court, and (2) the statute deprives us of appellate jurisdiction to review the district court's abatement ruling.

B.

1.

Section 2105 places restrictions on appellate review of "matters in abatement," but the statute does not define that phrase. Generally speaking, abatement refers to "[t]he suspension or defeat of a pending action for a reason unrelated to the merits of the claim." *Black's Law Dictionary* 3 (8th ed. 2004). At common law, abatement is the equivalent of a dismissal, and it results from the defendant raising some procedural or formality error in the plaintiff's action. 1 Am. Jur. 2d *Abatement, Survival, and Revival* § 1 (2006). Examples of abatement defenses include (1) a defense of prematurity, *i.e.*, that the plaintiff commenced the lawsuit before the underlying cause of action accrued; (2) a defense that the plaintiff's interest in the pending lawsuit has terminated or transferred to another party; (3) a defense that a lawsuit cannot proceed because of the death of either the plaintiff or the defendant; and (4) a defense that there is a separate, identical lawsuit pending. 1 Am. Jur. 2d *Abatement, Survival, and Revival* §§ 1-44. Because abatement defenses defeat the particular action for procedural defects that are unrelated to the merits of the plaintiff's claim, the plaintiff can typically correct the defects and proceed in another action. *See Bowles v. Wilke*, 175 F.2d 35, 38 (7th Cir. 1949) (noting that an abatement defense defeats the pending action but not the cause of action).

To decide whether § 2105 applies to this case, however, we need not determine whether "matters in abatement" include each of the abatement defenses listed above. Instead, we can rest solely on the Supreme Court's decisions in *Piquignot v. Penn. R. Co.*, 57 U.S. 104 (1853), and *Stephens*.[4]

---

[4]These cases addressed an earlier statutory incarnation of § 2105. There are no relevant differences between the earlier statute and § 2105.

In *Piquignot*, the plaintiff sued the defendant in state court and then, while the state court suit was pending, sued the defendant in federal trial court on the same cause of action. 57 U.S. at 104. The defendant raised as an abatement defense the fact that the state court suit was pending, and the federal court ruled for the defendant. The Supreme Court concluded that § 2105 applied to this type of abatement defense and accordingly refused to review the federal court's abatement ruling. *Id.*

*Stephens* involved the same abatement defense, *i.e.*, that the federal court should not proceed in the case because of a pending state court suit between the same litigants for the same cause of action. 111 U.S. at 197. Citing *Piquignot*, the Supreme Court held that an abatement defense that "another action [was] pending" fell within the meaning of § 2105 and that the Court could not review the federal court's ruling on that defense. *Id.* The Supreme Court explained that § 2105 bars appellate review of a ruling on an abatement defense because "[t]he defense is one which merely defeats the present proceeding," and therefore does not address the merits of the action or prevent the plaintiff from suing in the future. *Id.*

*Piquignot* and *Stephens* set forth the rule that whatever else the phrase "matters in abatement" means in the context of § 2105, it surely encompasses a ruling in which a trial court dismisses a case because there is a separate, identical pending case. This rule covers the exact circumstances here: the district court dismissed *Hyman II* because of GRIT's identical, pending action in *Hyman I*. Because the Supreme Court has held that such a ruling involves a "matter in abatement" under § 2105, we conclude that the statute applies to our review of the district court's abatement ruling.[5] *See also Teixeira v. Goodyear Tire & Rubber Co.*, 261 F.2d 153, 154 (1st Cir. 1958) (holding that § 2105 applies to a judgment of abatement for another action pending); *Green v. Underwood*, 86 F. 427, 430 (8th Cir. 1898) (same); 15A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 3903 (2d ed. 1992) ("By far the most common cases in which [§ 2105] has been invoked involve

---

[5]We note that nothing in this opinion implies that § 2105's force should be extended beyond the scope of the Supreme Court's prior interpretations of the statute.

rulings on motions to stay proceedings in deference to an action pending in another court.").

## 2.

GRIT offers three unpersuasive arguments for why § 2105 does not apply to this case. First, GRIT contends that the district court's abatement ruling was not a "matter in abatement" within the meaning of § 2105 because although a dismissal under abatement typically leaves a plaintiff free to recommence the legal action, here GRIT could be barred by the statute of limitations from bringing a future action; consequently, GRIT asserts that this dismissal affects the merits of GRIT's suit. GRIT errs by conflating the nature of the district court's abatement ruling with its potential effects. Like other without-prejudice dismissals that contemplate the plaintiff refiling a new action, abatement does not exempt a new action from a statute of limitations defense. *See Mendez v. Elliot*, 45 F.3d 75, 78 (4th Cir. 1995) (concluding that while a "without prejudice" dismissal "permits a plaintiff to refile the complaint as if it had never been filed . . . . [it] does not, however, give the [plaintiff] a right to refile without the consequences of time defenses, such as the statute of limitations"). Although any new action by GRIT may be subject to a statute of limitations defense, that does not transform the district court's abatement ruling in this case into a decision on the merits.

Second, GRIT contends that the district court's abatement ruling fits within § 2105's exception for "rulings on matters in abatement which . . . involve jurisdiction" because the district court was in effect deciding not to exercise its jurisdiction. *See Aetna State Bank v. Altheimer*, 430 F.2d 750, 753-54 (7th Cir. 1970) (concluding that § 2105's exception for rulings which involve jurisdiction allows appellate review of a district court's decision to abstain from exercising jurisdiction), *overruled on other grounds by Calvert Fire Ins. Co. v. Will*, 560 F.2d 792 (7th Cir. 1977). We disagree that the word "jurisdictional" in § 2105 reaches such a broad definition. Otherwise, the statute's exception would "swallow[ ] the entire rule" because "all matters of abatement . . . involve the same basic question whether the court should presently exercise its jurisdiction." Wright, Miller, & Cooper, *supra*, § 3903. Moreover, the broad definition of "jurisdiction" that GRIT propounds is contrary to the Supreme Court's appli-

cation of § 2105 in *Piquignot* and *Stephens*, in which the Court concluded that abatement rulings identical to the one in this case fell within § 2105's bar, not its exception.

Finally, GRIT contends that § 2105 does not apply here because the district court erroneously applied North Carolina's doctrine of abatement under the *Erie* doctrine. We disagree. The statute explicitly prohibits appellate reversal for "*errors* in rulings upon matters in abatement." 28 U.S.C.A. § 2105 (emphasis added). This broad prohibition applies to all non-jurisdictional errors and contains no exceptions for an erroneous choice of law. Therefore, even if GRIT is correct that the district court erred by applying North Carolina's doctrine of abatement, § 2105 prohibits our correction of that error.

### C.

Having determined that the district court's dismissal under North Carolina's doctrine of abatement falls within § 2105 because it is a ruling on a "matter in abatement," we must now determine if § 2105 is jurisdictional in the sense that it restricts our authority to review the district court's ruling. We keep in mind the Supreme Court's admonition that we not loosely characterize a statute as "jurisdictional" when it is actually a claim-processing rule that can be forfeited. *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004) ("Jurisdiction . . . is a word of many, too many, meanings." (internal quotation marks omitted)). Properly used, "jurisdiction" refers to the "classes of cases . . . falling within a court's adjudicatory authority." *Id.* at 455.

Section 2105 does not use typical modern-day jurisdictional language. For example, the statute does not state that abatement rulings are "not reviewable" or that the court of appeals "lacks jurisdiction." *See, e.g.*, *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 128-29 (1995) (concluding that there is no appellate jurisdiction over an order that a statute specifies as "not reviewable"). Instead, the statute states that "[t]here shall be no reversal" of an abatement ruling. Because of this peculiar language, some courts of appeals have held — or at least implied — that § 2105 only deprives courts of jurisdiction *to reverse*. *See Merchs. Ins. Co. v. Lilgeomont, Inc.*, 84 F.2d 685, 687 (5th Cir. 1936) ("The statute indeed prohibits only a reversal, and we shall not reverse."); *United States v. Alcon Labs.*, 636 F.2d 876, 885 n.2 (1st

Cir. 1981) (concluding that § 2105 did not bar review, in part because the disposition of the case — vacate and remand — was "not, technically, a 'reversal'"). According to these courts' reasoning, an appellate court must examine the merits of the abatement ruling before determining whether jurisdiction exists: if the abatement ruling was correct, jurisdiction exists to affirm; but if the abatement ruling was in error, the case must be dismissed.

We respectfully disagree with this interpretation of § 2105 and note that it raises a serious constitutional issue: by restricting the authority of appellate courts to change the result, the statute strongly suggests that any appellate review of abatement rulings would be purely advisory and therefore be beyond a federal court's Article III powers. *See* Wright, Miller, & Cooper, *supra*, § 3903 n.24 ("Since [appellate] courts lack power [under § 2105] to reverse, the result of unfavorable review would be purely advisory and beyond the limits of Article III."); *United States v. Evans*, 213 U.S. 297, 301 (1909) (noting that federal courts lack constitutional authority to give advisory opinions); *11126 Baltimore Blvd. v. Prince George's County, Md.*, 924 F.2d 557, 558 (4th Cir. 1991) (dismissing appeal for lack of jurisdiction because appellant was seeking an advisory opinion).

We need not address this constitutional issue, however, because the better interpretation of § 2105 — one that avoids the constitutional problem — is that the statute completely deprives this court of authority to review the district court's abatement ruling. *See Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 173 (2001) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." (internal quotation marks omitted)).

A brief review of the Judiciary Act of 1789, coupled with the Supreme Court's decision in *Stephens*, confirms that the dated language of § 2105 was meant to exclude abatement rulings from appellate jurisdiction. *See* Act of Sept. 24, 1789, § 22, 1 Stat. 73, 84-85. Section 22 of the Judiciary Act established appellate jurisdiction over "final decrees and judgments in civil actions" in district courts. *Id.*; *see Piquignot*, 57 U.S. at 104 ("The twenty-second section of the

Judiciary Act . . . defines what decrees or judgments in civil actions may be made the subjects of appeals . . . ."). After setting forth this general appellate jurisdiction, however, Congress added some exceptions to appellate jurisdiction, including the exception that "there shall be no reversal . . . for error[s]" in abatement rulings. Act of Sept. 24, 1789, § 22, 1 Stat. 84-85. The purpose of this language was to permit appellate jurisdiction over a case, which could include multiple rulings subject to appellate review, while excluding abatement rulings from appellate review. *See* Charles Warren, *New Light on the History of the Federal Judiciary Act of 1789*, 37 Harv. L. Rev. 49, 104 (1923) (stating that the words "no reversal" were used to remove appellate jurisdiction over certain rulings). The Supreme Court's application of § 2105 in *Stephens* confirms this reading. In that case, after determining that the abatement ruling fell within the strictures of § 2105, the Court declined to analyze the correctness of the abatement ruling, stating that the abatement ruling "'was not subject to . . . revision.'" *Stephens*, 111 U.S. at 198 (quoting *Piquignot*). The Court went on, however, to analyze the merits of other issues raised on appeal.

The statute, then, is best read as excluding from general grants of appellate jurisdiction an appellate court's authority to review abatement rulings. Thus, we agree with the courts that have concluded that § 2105 completely deprives appellate courts of jurisdiction to review the merits of a district court's abatement ruling. *See Teixeira*, 261 F.2d at 154 (concluding that § 2105 completely deprives an appellate court of jurisdiction to review an abatement ruling); *Bowles*, 175 F.2d at 38 (same); *Green*, 86 F. at 430 (same).

### III.

Section 2105 may be "[o]ne of the most commonly ignored provisions of the Judicial Code . . . ." Wright, Miller, & Cooper, *supra*, § 3903. Regardless, the statute remains in effect, and we are bound to consider it. Moreover, the Supreme Court applied § 2105 in *Piquignot* and *Stephens* to abatement rulings indistinguishable from the abatement ruling in this case. Although they are old cases, their continuing vitality has never been called into question by the Court. We therefore must heed the instruction that "[i]f a precedent of [the] Court has direct application in a case," we must follow it, "leaving to [the] Court the prerogative of overruling its own decisions." *Agostini v. Felton*,

521 U.S. 203, 237 (1997). Because the only issue in this appeal — whether the district court properly dismissed *Hyman II* because *Hyman I* was pending on appeal — is an abatement ruling that falls within provisions of § 2105, we do not have appellate jurisdiction to review the district court's dismissal. We accordingly dismiss GRIT's appeal.

*DISMISSED*