**PJC BROTHERS, LLC, Plaintiff,**

v.

**S&S CLAIMS SERVICE, INC., et al., Defendants.**

**Civil Action No. H–09–3838.**

United States District Court, S.D. Texas, Houston Division.

March 15, 2010.

William W. Lundquist, Clark Dean Burnett GP, Houston, TX, for Plaintiff.

Peri Hayriye Alkas, Phelps Dunbar LLP, Houston, TX, for Defendants.

1. The motion has been referred to this magistrate judge for resolution (Dkt.13).

2. A "motion to abate" is not expressly authorized by federal statute or rule. *See Wyatt v. Terhune,* 305 F.3d 1033, 1044–45 (9th Cir.2002) ("a matter in abatement ... is subject to an unenumerated Rule 12(b) motion."). While federal courts have authority to entertain such preliminary motions, the decision to do so is largely a matter of

## ORDER

STEPHEN WM. SMITH, United States Magistrate Judge.

Defendants S & S Claims Service, Inc. and Stephen Volpert have filed a motion[1] to "abate"[2] this insurance lawsuit until the plaintiff's representative has submitted to an "examination under oath" as provided under the insurance policy. The motion (Dkt.7) is denied.

Plaintiff PJC Brothers PLC has sued defendants for failure to pay a sufficient amount for Hurricane Ike damage under a commercial property insurance policy ("policy"). The policy apparently was issued by Certain Underwriters at Lloyd's of London ("Underwriters"), which is not yet a party to this action. The claim was filed on September 17, 2008. Underwriters assigned investigation of the claim to defendant S & S Claims Service, Inc. and its adjuster, defendant Stephen Volpert. The claim was initially denied on February 6, 2009.

This lawsuit was filed on September 10, 2009. Before defendants were served, Underwriters requested that PJC submit to an examination under oath concerning the loss, in accordance with the following policy provision:

> We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or this claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.[3]

Plaintiff has so far declined the request. Defendants contend that the lawsuit is premature until the examination under oath takes place, citing the following policy provision:

judicial discretion, "which must be exercised in light of the policy against unnecessary dilatory motions." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1360 (3d ed.2004); *see also* 28 U.S.C. § 2105 (precluding appellate reversal for "error in ruling upon matters in abatement which do not involve jurisdiction").

3. Motion (Dkt.7), at 3.

## D. LEGAL ACTION AGAINST US

No one may bring legal action against us under this Coverage part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action is brought within two years after the date on which the direct physical loss or damage occurred ... [4]

In other words, defendants argue that plaintiff cannot bring this action because it is not in "full compliance" with its obligation to submit to the requested examination under oath. *See Philadelphia Underwriters' Agency v. Driggers*, 111 Tex. 392, 238 S.W. 633 (1922) (while not a bar to recovery, the refusal of policyholder to submit to examination after loss suspends the right of recovery until examination is complied with).

There are several problems with this argument. First, the request for examination was not made until *after* the lawsuit was brought. On the date this suit was filed, plaintiff could not possibly have been non-compliant, because no request had yet been made. It does not matter that defendants had not yet been served; section D does not use the word "serve." It says "No one may *bring* legal action against us...." To "bring an action" means to "institute legal proceedings," which is accomplished by the filing of a complaint. BLACK'S LAW DICTIONARY 205 (8th ed.2004). Plaintiff was not out of compliance with this policy obligation when it filed this action.

Nor does it matter that the entity now requesting the examination, Underwriters, has yet to be joined as a party defendant. The named defendants, by their own admission, were assigned to investigate the claim on behalf of Underwriters. Nothing precluded these defendants, acting on Underwriters' behalf, from invoking the policy to request an examination under oath if they felt it necessary to the investigation. Underwriters is not an unrelated third party asserting an independent right to an examination, separate and distinct from the right possessed by the named defendants. Under these circumstances, the fact that Underwriters has not

yet been named or served [5] is a mere fortuity.

It is true that examination under oath clauses have long been recognized as a reasonable and valid contractual provision for discovery. *See, e.g., Claflin v. Commonwealth Ins. Co.*, 110 U.S. 81, 94–95, 3 S.Ct. 507, 28 L.Ed. 76 (1884) ("The object of the provisions in the policies of insurance, requiring the assured to submit himself to an examination under oath, to be reduced to writing, was to enable the company to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims."); *Merchants Ins. Co. v. Lilgeomont, Inc.*, 84 F.2d 685, 687–88 (5th Cir.1936). Such clauses effectively allow the insurance company to take the insured's deposition out of court, without having to wait for suit to be commenced. By the same token, once an action is filed in federal court, all discovery (including depositions) is governed by the Federal Rules of Civil Procedure. *See* FED. R.CIV.P. 1.

One of those discovery rules provides that discovery by one party does not require the other party to delay its own discovery, unless "the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice." FED. R. CIV. P. 26(d)(2)(B). The abatement proposed here would turn this rule on its head, giving the insurer a tactical means to avoid all discovery obligations until the insured was deposed. It is doubtful that an insurance policy may override the Federal Rules of Civil Procedure in such a manner. But even accepting that possibility, this particular clause—which omits any reference to discovery during litigation—does not confer any special priority to contractual discovery over in-court discovery. Indeed, the contractual discovery sought here is superfluous, because at this stage of proceedings a Rule 30 deposition is

---

4. *Id.*, at 3–4.

5. Plaintiff's counsel has signaled that this omission will be corrected soon.

the functional equivalent of an examination under oath.[6]

Finally, and most importantly, the abatement sought here would be contrary to the cardinal principle that the rules of procedure be administered "to secure the just, speedy, and inexpensive determination of every action." FED.R.CIV.P. 1; *see* 5C, WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1360, at 78 (3d ed. 2004) ("[A]lthough a given motion might raise a valid point, unless its determination would have the effect of promoting 'the just, speedy, and inexpensive determination' of the action as mandated by Rule 1, the district court should probably deny the application and thereby avoid any delay."). Plaintiff's claim was investigated and denied over a year ago, suit was filed six months ago, and a docket control order has now issued. No just or worthwhile purpose would be served by suspending these proceedings to allow Underwriters to take a belated and unneeded out-of-court deposition.

Defendants' motion to abate (Dkt.7) is denied.

---

6. The one possible difference—that the examination under oath take place outside the presence of other insureds—is immaterial here, since there is apparently only one insured under this policy.