**FARM BUREAU TOWN AND COUNTRY INSURANCE COMPANY OF MISSOURI, Plaintiff-Appellant,**

v.

**Larry CRAIN and Bonnie Crain, Defendants-Respondents.**

No. 14632.

Missouri Court of Appeals,
Southern District,
Division Two.

June 8, 1987.

Jerry L. Reynolds, Larry B. Moore, Jerry L. Reynolds and Associates, P.C., Springfield, for plaintiff-appellant.

David A. Childers, John E. Price, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for defendants-respondents.

HOGAN, Judge.

Appellant Farm Bureau Town and Country Insurance Company (hereinafter Farm Bureau) appeals from an order and judgment entered against it in which the trial court: a) ruled against the plaintiff on its petition for a declaratory judgment; b) struck the defense of arson (and other defenses) from plaintiff's second amended answer to defendants' counterclaim, and c) entered judgment in favor of the defendants and against plaintiff in the amount of $52,500 plus interest at the rate of 9 percent per annum from the date of judgment. The case has come to us on an almost incredibly diffuse record, and upon an appellant's brief which is not very helpful. Some preliminary recitation of the factual and procedural background of the appeal is necessary to an understanding of the opinion.

In 1978, defendants Larry and Bonnie Crain purchased a residence in Dallas County near Buffalo. This residence burned on July 24, 1980. Farm Bureau paid the fire loss claim and the defendants built another residence on the same lot. Farm Bureau issued a homeowner's insurance policy to the defendants covering the second dwelling against loss by fire in the amount of $35,000 and unscheduled personal property against loss by fire in the amount of $17,500. The policy also provided for a "living expense" allowance in the amount of $3,500. In the early morning of April 10, 1982, the second residence was destroyed by fire.

Defendant Larry Crain was at home alone at the time of the fire on April 10, 1982. His wife and their children were in Kansas City. In one of the first of many interviews with the insurer's representa-

tives, Crain gave as his opinion that neither the weather nor any electrical malfunction caused the fire, but did express the opinion that some personal enemy might have set fire to his residence maliciously.

Farm Bureau immediately began an investigation. The local adjuster, Mike Sanwald, was unable to determine the cause of the fire and Robert Morrison, the insurer's fire investigator, was called in. Morrison inspected the site of the Crain residence on April 20, 1982. Morrison, who had considerable experience as a fire investigator—he had been State Fire Marshal—reached the conclusion that the fire had been set. A report made by the State Fire Marshal (which is not before us) also indicated the fire was possibly of incendiary origin.

Farm Bureau interviewed both defendants several times. On May 25, an attorney retained by Farm Bureau took the statement of defendants under oath. In the course of this interview defendant Larry Crain refused to answer several questions, asserting they were not pertinent to the fire loss. Further, according to Farm Bureau's representative, Crain demanded that Farm Bureau either deny his claim or pay it. On June 11, 1982, Farm Bureau denied the claim because Crain had refused to submit to an examination under oath and answer questions, as required by the policy.

On July 20, 1982, a little more than a month after the denial letter was sent to Mr. Crain, Farm Bureau filed an action for a declaratory judgment in the Circuit Court of Dallas County, alleging that defendants' policy required them to submit to examination under oath by any person named by Farm Bureau; that defendant Larry Crain had refused to submit to sworn examination as required by the policy and Farm Bureau had, as a consequence, been unable to complete its investigation, to its prejudice. Prayer of the petition was for an order determining the rights and obli-

gations of the parties and for an order declaring that Farm Bureau was not obligated to entertain the Crains' claim.

In due course, the defendants filed an answer, averring among other things that "any actual controversy of [a] justiciable nature which exists may not be determined by a judgment in this action without [another] suit." Defendants also denied that Farm Bureau had been prejudiced by "any refusal or delay" on defendants' part. Defendants also filed a counterclaim, essentially declaring upon the policy. Defendants specifically alleged compliance with all terms and conditions of the policy. It was also averred that Farm Bureau's refusal to pay was vexatious, and defendants prayed damages for vexatious delay and for attorneys' fees. The plaintiff filed answer[1] to the counterclaim, incorporating the averments of its petition and alleging that defendants were "not entitled to recover herein for the reason that the alleged losses occurred as a result of deliberate acts performed by them or on their behalf."

The defendants filed a motion for summary judgment, and this motion was subsequently amended. In the amended motion, defendants alleged, among other things, that as a matter of law, plaintiff's petition for a declaratory judgment was not a substitute for existing remedies, and was an improper action where an adequate remedy already exists; that defendants, by counterclaim, had asserted their claim to payment under the policy; that plaintiff had asserted two defenses under the policy, specifically that the defendants had procured the burning of their property and had failed to submit to an examination under oath. The defendants further alleged that "as a matter of law" defendants' failure to submit to a sworn statement under oath was not an affirmative defense to the counterclaim; that as a matter of law, plaintiff had failed to assert its pleaded defense of intentional burning in its denial

1. A pleading responding to a counterclaim is properly designated a *reply*. Rule 55.01. We use the word "answer" only because the plaintiff so designated its responses to the counterclaim. We do not encourage such pleading misnomers.

letter and in its petition for declaratory judgment and was therefore estopped from asserting the defense of arson. Prayer of the motion was for summary judgment upon the petition for declaratory judgment and for judgment for defendants on defendants' counterclaim. The trial court sustained the defendants' motion for summary judgment upon plaintiff's petition for declaratory judgment and ordered the defense of arson stricken from plaintiff's answer to the counterclaim. This order was entered December 3, 1984.

Farm Bureau then filed an alternative motion requesting that the trial court designate its order a final judgment for purposes of appeal pursuant to Rule 81.06, or for leave to file an amended answer. The trial court refused to designate its order a final order for purposes of appeal, but granted leave to amend. Plaintiff filed a "first amended answer" to the counterclaim. After the defendants had filed a motion for a more definite statement, plaintiff was given leave to file a second amended answer to the counterclaim.

The contents of this second amended answer must be noted. Farm Bureau again asserted that its insureds were not entitled to recover "for the reason the alleged losses occurred as a result of deliberate acts performed by them or on their behalf." In paragraphs 12, 13, 14 and 15, Farm Bureau pleaded sundry acts—some of which had previously been defensively pleaded as a failure to comply with the conditions of the policy—as "concealment, fraud and/or false swearing."

Thereafter, the defendants filed a pleading denominated a "motion to strike or in the alternative for summary judgment." In this pleading, the defendants averred that: a) the trial court had on at least two prior occasions admonished plaintiff to plead new and additional facts justifying avoidance of waiver of the defenses which had been raised subsequent to its initial denial of June 11, 1982, and subsequent to its action instituted against the insureds on or about July 20, 1982; b) plaintiff had failed to allege new material justifying the avoidance of the doctrines of waiver and estoppel with respect to its belated attempt to raise additional defenses that were not included in its initial denial or in its initial lawsuit; c) that as a result, paragraphs 10, 12, 13, 14, 15 and 16 of plaintiff's second amended answer were immaterial to the issues of the case and the defenses pleaded had been waived, and d) that the defendants "incorporate by reference the previous suggestions filed with this Court on or about February 22, 1985 and February 27, 1985 in support of its motion to strike."

This motion was sustained March 6, 1985, as to paragraphs 10, 12, 13, 14, 15 and 16 of plaintiff's second amended answer, thus effectively removing all issues from the case except the claim for vexatious refusal to pay. The defendants voluntarily dismissed their claim for penalties for vexatious refusal to pay. On December 11, 1985, the trial court had finally entered the following order, omitting formal recitations: 1) The refusal of Larry Crain to answer questions submitted in his sworn examination under oath on May 25, 1982, constituted a failure to comply with a condition precedent to recovery by defendants on the policy of insurance and did not constitute a forfeiture; 2) That Farm Bureau, by denying defendants' claim on the ground that the defendants had refused to answer questions under oath, and by requesting exoneration on that ground in its declaratory judgment action was precluded from asserting the defense of arson, and 3) That the request for a declaratory judgment did not present a justiciable action; would not dispose of all issues in the lawsuit, and was denied. The court also entered judgment for the defendants on their counterclaim in the amount of $52,500 with interest thereon at the rate of 9 percent per annum from and after July 20, 1983.

We have set out the procedural history of the case at tedious length to illustrate that we cannot really know what the trial court intended nor the grounds upon which it acted. In paragraph (1) of its order of

December 11, 1985, it purported to declare the rights of the parties—to a certain extent—as prayed in the petition for declaratory judgment; in paragraph (3) the court effectually dismissed the action for declaratory judgment. In paragraph (2) of the order, the trial court held that the plaintiff was barred from asserting the defense of arson. The trial court also allowed the filing of an amended answer by the plaintiff, then struck much defensive matter from that pleading. We are remitted to the general principles set out in Rule 73.-01(c), as construed in *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976), and, inasmuch as the facts have been fully developed, to the powers conferred on this court by Rule 84.14.[2]

Upon prolonged consideration of the voluminous record, we conclude that three basic issues are presented by this appeal. They are: 1) Should the trial court have dismissed the declaratory judgment on the ground that it was an improper remedy in this case? 2) Was the defense of arson properly stricken? 3) Were the other defenses averred in the plaintiff's "second amended answer" properly stricken on the defendants' motion? One other question will be briefly dealt with.

## I

### Should the Action for Declaratory Relief Have Been Dismissed?

#### (A)

In this court, Farm Bureau ignores the inconsistency in the trial court's action: a) declaring the parties' rights in the declaratory judgment action in part (1) of its order, and b) in the same judgment dismissing the declaratory judgment action by holding that it did not present a justiciable action, "would not dispose of all issues in

[the] lawsuit and [was] denied." The plaintiff argues that the trial court "should have declared the law to be that the requirement in a contract of insurance to submit to an examination under oath is a condition precedent which will not void the policy but only delay the insureds' right to claim, however, if the insureds' conduct, relating to a material matter, has prejudiced the insurer, such conduct can be used as a claim or defense against the insured." Farm Bureau would have us draw an analogy between the policy provision in issue and the cooperation clause considered in *Hendrix v. Jones*, 580 S.W.2d 740 (Mo. banc), 9 A.L.R.4th 207 (1979), and argues that in *Calvert v. Safeco Ins. Co. of America*, 660 S.W.2d 265 (Mo.App.1983), our colleagues of the Western District considered an insured's refusal to answer questions under oath "as a failure to cooperate issue."

In this case, the policy specifically provided that:

> "The insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, *and submit to examinations under oath by any person named by this Company, and subscribe the same* ...." (Our emphasis.)

Similar provisions have more or less consistently been held by our courts and courts in other jurisdictions to be a species of condition precedent. See *Weiss v. Continental Ins. Co.*, 61 S.W.2d 392, 394 (Mo. App.1933); *Knight v. Firemen's Ins. Co. of Newark, N.J.*, 227 Mo.App. 426, 432–33, 49 S.W.2d 682, 686[6] (1932); *Gordon v. St. Paul Fire & Marine Ins. Co.*, 197 Mich. 226, 163 N.W. 956, 957[1] (1917); *Humphrey v. National Fire Ins. Co.*, 231 S.W. 750, 752–53[3] (Tex.Civ.App.1921). There

---

**2.** "The appellate court shall award a new trial or partial new trial, reverse or affirm the judgment or order of the trial court, or give such judgment as the court ought to give. Unless justice otherwise requires, the court shall dispose finally of the case. No new trial shall be ordered as to issues in which no error appears." At least

where no further adjudication is necessary, this rule permits an appellate court to render the judgment which should have been given. *Vilelle v. Reorganized School Dist. No. R–1*, 689 S.W.2d 72, 77[14] (Mo.App.1985); *Morrison v. Morrison*, 676 S.W.2d 279, 281–82 (Mo.App.1984); *Marks v. Marks*, 625 S.W.2d 700, 702 (Mo.App.1981).

is other authority that noncompliance with this condition precludes recovery. See *Kisting v. Westchester Fire Insurance Company*, 290 F.Supp. 141, 147–48[4] (W.D.Wis.1968). We find it unnecessary to resolve finally whether the quoted clause is a species of "cooperation" clause.

(B)

The record before us discloses that two distinct examinations which could be considered "examinations under oath" were conducted by Farm Bureau. On May 25, 1982, both Larry and Bonnie Crain submitted to examination under oath at the office of an attorney in Springfield. Mr. Crain did refuse to answer several questions which were material to the loss sustained. One of the questions Mr. Crain refused to answer—the name and present address of his second wife—had very little bearing upon the loss sustained, but Farm Bureau had information indicating the fire might be an incendiary fire, and the questions put on May 25 concerning Crain's financial affairs were material. Of course, in a deposition taken after suit was commenced, Crain answered all questions put to him concerning his financial affairs. Moreover, there is evidence that well before the interview of May 25, Farm Bureau was fully advised concerning Crain's financial affairs. This is apparent from Mr. Morrison's deposition. The logic of the Fifth Circuit in *Merchants Ins. Co. v. Lilgeomont*, 84 F.2d 685 (5th Cir.1936), construing similar policy provisions, is persuasive here. The court held:

"Under such an agreement there is no avoidance of the policy on a failure to comply. The fair construction is that the suspension of the right to sue is for the enforcement of the right to a discovery, and when the latter right is secured the right to sue is restored. If an insured willfully and *without excuse* refuses discovery, an insurer may refuse to go forward with an adjustment and claim immunity from suit; but here the insured could not produce books of account which did not exist, and she answered hundreds of questions, refusing to answer only a few. These refusals were repaired to the extent of her ability when testifying in this preliminary trial in court. The judge committed no error in permitting her to explain why she had refused to answer before *and in letting the jury pass on the sufficiency of her excuse.*" (Our emphasis.)

*Id.*, 84 F.2d at 688.

So, in the case at hand, the evidence presented in connection with the insured's obligation to answer questions under oath merely presented a question for the jury. Did Larry Crain have an excuse for his refusal to answer questions on May 25 because he had already furnished information concerning his financial condition? Was his refusal to answer repaired by his willingness to cooperate upon deposition? Such questions were questions of fact, questions for resolution by a jury. The policy itself provides in terms that giving a statement under oath is a *"requirement;"* further, like the policy considered in *Calvert*, 660 S.W.2d at 270, the policy before us specifically provides that "No suit or action on this policy for the recovery of any claim shall be sustainable ... unless all the *requirements* of this policy shall have been complied with...." (Emphasis added.) *Calvert* dealt with notice and proof of loss, but we consider the court's reasoning applicable here. The clause in issue on this appeal is a condition precedent to maintaining an action which must be pleaded and proved by the insured.

(C)

Does it then follow that the insured's compliance with a condition precedent was not properly the subject of an action for a declaratory judgment and that the trial court properly dismissed the action? We believe the defendants are correct in arguing that the order dismissing the action for a declaratory judgment was proper. This court has held that except in "'exceptional circumstances plainly appear-

ing,'" the Declaratory Judgment Act, now Rule 87, is not to be used when an adequate remedy already exists, and an "adequate remedy" exists if the plaintiff could assert the issues sought to be declared as a defense in an action brought by the defendant. *Polk County Bank v. Spitz,* 690 S.W.2d 192, 194[5][6] (Mo.App.1985). Rule 87.07 provides further that the court may refuse declaratory relief if such relief or decree would not terminate the uncertainty or controversy giving rise to the proceeding. Here, the action was brought seeking a declaration that a condition precedent to the maintenance of suit had not been complied with. The conventional rules of civil practice and procedure apply in declaratory judgment actions, *State Farm Mut. Auto. Ins. Co. v. Johnson,* 586 S.W.2d 47, 55–56[13] (Mo.App.1979), and it was proper for the defendants to declare upon the policy by counterclaim. From and after the time the counterclaim was filed, the plaintiff had an "adequate remedy" by way of its answer to the counterclaim. We believe, and hold, that the declaratory judgment was properly dismissed.

## II

### *Was the Defense of Arson Properly Stricken From the Plaintiff's Pleadings?*

#### A

A good deal more complicated issue is raised by the trial court's action striking Farm Bureau's pleaded defense of arson. The facts upon which Farm Bureau relied must be briefly noted. Shortly after the fire occurred on April 10, 1982, Farm Bureau asked Robert Morrison, its fire investigator, to try to determine what caused the fire. On April 20, Morrison inspected the site of the Crain residence. Upon deposition taken after suit was commenced, Morrison stated that "[b]y eliminating [any] accidental causes on the date of [the] first investigation, I made a classification of a suspicious fire."

Farm Bureau's suspicion that the fire might have been an incendiary fire was doubtless aroused by Mr. Crain's explanation of his belief that some person had maliciously set fire to his residence. In a statement made to Morrison and a staff adjuster, Crain stated as fact that near the end of October 1981, he had refused to extend credit to the son of a local man who owned an ice dispensing machine located in Crain's service station. The owner of the machine decided to remove it from Crain's premises, and a quarrel between Crain and the owner of the ice dispenser followed. The local chief of police was present, but took no action.

Two weeks later, Crain had a fight with the son of the man who owned the ice machine. According to Crain, "when the fight was over we were talking to the police and the owner of the [ice] machine came up with a loaded pistol, aimed it at me, and then hit me with it, knocked me unconscious." Crain complained to the Buffalo city council because both he and the young man with whom he fought were charged with fighting but the owner of the ice machine was not. Crain went before the council on two other occasions, complaining about the police chief. About this time, Crain and his wife began receiving anonymous telephone calls. The antiphonal speaker usually said nothing.

Crain also stated that about 3 weeks before the fire, he found a "Molotov cocktail"—a soda bottle partially filled with gasoline and equipped with a crude wick—on his front porch. Peace officers were summoned and they took the incendiary device in possession. Mrs. Crain was frightened and decided to go to Kansas City with the children.

Four or five days after the gas bottle incident, while he was alone at home, Crain was awakened at night by the barking of his dogs. Crain went to the front door. He saw "somebody starting to walk up my driveway carrying a bottle, a jug or something...." Crain opened the door and "asked them what they wanted ...;" the person or persons in the driveway fired a shot at Crain. Crain returned their fire;

he "thought" he hit one of the intruders, but could not be sure. Peace officers were again called; this time the intruders had dropped "a gallon anti-freeze [sic] jug and it was full of gas." Shortly thereafter, the Crains' residence was destroyed by fire.

Granting that the recitation of such bizarre or unusual facts would be sufficient to arouse the suspicion of any casualty insurer, we must inquire whether Farm Bureau had any substantial evidence that the Crain fire was an incendiary fire.

The substance and evidentiary weight of the insurer's proof of incendiarism may be illustrated by quoting a few excerpts from Mr. Morrison's pretrial deposition. Morrison had a good deal of expertise and had been the State Fire Marshal, but he also exhibited a tendency to regard any unexplained fire as an "incendiary" fire.

Upon deposition, Mr. Morrison was shown some photographs, identified as the "overall scene of the fire." Morrison was then asked if the photographs depicted anything significant. His answer was:

> "With the complete burning of this structure, and with the disarray of the steel and things of this nature, and with the elimination of natural and accidental causes, why, this helps me to show that we had an incendiary fire here.
>
> \*     \*     \*     \*     \*     \*
>
> Q. You've used the term 'incendiary fire.' Now, a minute ago, you said you didn't have an opinion as to the cause of the fire. Are you now of the opinion that it was an incendiary fire?
>
> A. Sir, I thought you asked me if there was a point of origin or something where the fire started, and the cause at that point of origin.
>
> Q. First, I'll rephrase my question. Did you find a point of origin?
>
> A. I did not.
>
> Q. Did you find a cause for this fire?
>
> A. To my opinion, with all of the investigation I've made, it was an incendiary fire.
>
> Q. What do you mean by 'incendiary fire'?
>
> A. Again, going back, I eliminated the accidental and natural causes of the fire, as we have discussed previously.
>
> \*     \*     \*     \*     \*     \*
>
> Q. Well, do you have an opinion as to what caused the fire?
>
> A. No, sir."

Mr. Morrison found no traces of hydrocarbons, although he had used a device called a "sniffer," which is used to detect the presence of hydrocarbons. He found no "wick" nor any ignition device. He attached considerable significance to what he referred to as "spalling concrete" which he found in part of the basement.[3] This "spalling" sometimes indicates that a flammable liquid has burned where the spalling occurs, but it may also indicate a poor grade of concrete.

■■ We need not state the evidence of arson further in an already cluttered opinion. It has been established in this State since *State v. Paglino*, 319 S.W.2d 613, 622–23[8] (Mo.1958), that when the cause of the fire is such that men of common experience would be left in doubt or without basis to form an opinion, a qualified expert may testify to the cause of the particular fire, and, if he is properly qualified, his opinion is evidence. *State v. Paglino*, 319 S.W.2d at 623. We conclude Farm Bureau's evidence of arson, or of incendiarism, rises above the level of mere suspicion.

**B**

■■ A further question is whether the plaintiff "waived" its defense of arson or estopped itself to assert that defense by its letter of denial dated June 11, 1982. We bear in mind that under Missouri law an

---

**3.** The term "spall" as used with regard to poured concrete refers to a situation in which pieces of concrete fall off a concrete structure. *In re*

*Petition of Boat Demand, Inc.*, 174 F.Supp. 668, 672 (D.Mass.1959).

insurer may, by its conduct, waive defenses which are otherwise available under a policy. *Calvert v. Safeco Ins. Co. of America,* 660 S.W.2d at 268–69. We also bear in mind that in some circumstances, the defense of arson may be waived or the insurer may be estopped to assert it. *State ex rel. Shelter Mut. Ins. Co. v. Crouch,* 714 S.W.2d 827, 828 (Mo.App.1986). The facts of this case do not justify a finding of waiver or estoppel.

Farm Bureau's letter of denial read as follows: (Our emphasis)

"Dear Mr. Crain:

We are unable to complete our investigation into the cause of the fire on which you have made a claim, because you have refused to comply with the provisions of the policy which require you to answer questions under oath. You have asked us for a determination of your claim nevertheless.

Under the present state of circumstances, we must deny your claim, *because you have failed to fulfill the conditions of your policy which require you to submit to an examination under oath and answer questions.* If questions submitted to you were˙fully answered, we would use the information obtained to complete our investigation and determine if the claim should be denied or paid.

All indications are that the fire is of incendiary origin, but we cannot be more specific until the investigation is completed.

At this time the claim is denied, at your request, because you have failed to cooperate in the investigation as explained. *It is not our intention to waive other defenses.*"

▮ Only a strained construction of this letter permits the inference that Farm Bureau intended to waive its defense of arson. The writer, a regional claims supervisor, specifically indicates that the insurer believes the fire is of incendiary origin, but "cannot be more specific." It is also stated that Farm Bureau does not intend to waive

other defenses. Limiting our holding to the facts before us, we find no waiver of the defense of arson in the letter denying the claim. Inasmuch as we have held that the declaratory judgment action was improper in the circumstances, it follows that Farm Bureau should have been allowed to plead its defense of arson and that defense was improperly stricken out of the final amended answer to the defendants' counterclaim.

## III

*Were the Other "Policy Defenses" Alleged in the Plaintiff's Second Amended Answer Properly Stricken Out?*

We must further consider the trial court's order of March 6, 1985, striking paragraphs 12, 13, 14, 15 and 16 from plaintiff's second amended answer. In its original answer, the plaintiff pleaded two defenses. By reference to its petition for declaratory judgment, the plaintiff pleaded refusal to answer questions under oath as a defense and also pleaded the defense of arson.

In its first and second amended answers, the plaintiff pleaded various acts on the part of the insureds as "concealment, fraud and/or false swearing." To illustrate what was pleaded, we set out part of the second amended answer:

"12. The 'insured' committed concealment, fraud and/or false swearing causing the subject policy to become void in one or more of the following ways:

\*     \*     \*     \*     \*     \*

c. The 'insured' refused to answer material questions posed during an examination under oath which the insured was required to submit to under the terms of the policy;

d. The 'insured' prevented the continuation of the ongoing investigation into the claimed losses by refusing to cooperate with the Plaintiff and by refusing to answer questions posed during an examination under oath;

\*     \*     \*     \*     \*     \*

h. The 'insured' committed concealment, fraud and/or false swearing by claiming one Robert Owens had possession of the insureds' video recorder when in truth and fact Robert Owens did not have possession of the said video recorder but in truth and fact the location of the video recorder had been concealed by the insured;

i. The 'insured' committed concealment, fraud and/or false swearing by attempting to subordinate one Robert Owens into committing perjury by saying he had possession of the insureds' video recorder;

\* \* \* \* \* \*

13. Because of the concealment, fraud and/or false swearing by the 'insured', Plaintiff was not able to learn true facts concerning the claimed losses until November, 1982 during the pendency of the instant lawsuit, to the prejudice of Plaintiff.

\* \* \* \* \* \*

15. Because of the concealment, fraud and/or false swearing by the 'insured', Plaintiff was not able to learn of Defendants' financial difficulties, business inventory discrepancies and mortgages until after the pendency of the instant lawsuit."

■ In connection with the amendment of its pleadings, Farm Bureau has made a great deal in its brief and in its argument of its discovery, upon taking the pretrial deposition of George Robert Owens on November 3, 1982, that after the fire occurred, Larry Crain had asked Owens to "'be an alibi for [Crain] and say that you have my video recorder.'" Owens had refused. As we understand the record, Crain made no claim under the policy for loss of the video recorder. He did refuse to say who had the video recorder because he was not claiming the video recorder was lost in the fire. Farm Bureau has not indicated how a refusal to answer, with respect to this video recorder, suddenly became "false swearing" after the action was commenced.

The whole argument concerning the video recorder is strained, tenuous and without merit.

■ There is a general rule that if an insurer denies liability on a particular ground, it may not thereafter advance a different ground for denying liability, if the original denial was made with full knowledge of the facts. *Calvert v. Safeco Ins. Co. of America*, 660 S.W.2d at 271; *Hounihan v. Farm Bureau Mutual Ins. Co. of Mo.*, 523 S.W.2d 173, 175 (Mo.App.1975); *Kammeyer v. Concordia Telephone Company*, 446 S.W.2d 486, 490[2] (Mo.App. 1969).

■ There is a considerable difference between failure to answer questions under oath and "false swearing" as matters of defense or avoidance in an action upon a fire policy. As we have seen, the failure to answer questions under oath constitutes failure to comply with a condition precedent to suit. False swearing, on the other hand, voids the policy and forfeits the whole sum due if the policy so provides, as it does in this case. *Hamberg v. St. Paul Fire & Marine Ins. Co.*, 68 Minn. 335, 71 N.W. 388, 389[5] (1897); 5A Appleman, Insurance Law and Practice § 3552, p. 563 (Rev. ed. 1970).

Although we decline to go over plaintiff's second amended answer sentence by sentence and phrase by phrase, what we have set out is sufficient to show that plaintiff, in the paragraphs which were stricken out, attempted to convert its defense from failure to answer questions under oath to false swearing. We have carefully examined the record and conclude that the *only* information the plaintiff obtained after it filed its first answer was Mr. Owens' statement concerning the videotape recorder. We conclude the trial court properly struck paragraphs 12, 13, 14, 15 and 16 from plaintiff's second amended answer.

IV

To sum up our ruling and decision, we conclude and find: 1) That the trial court

should have dismissed plaintiff's declaratory judgment action for the reasons stated in the opinion; it is ordered that this be done; 2) The trial court improperly struck paragraph 10 of plaintiff's second amended answer, asserting the defense of arson; upon trial the plaintiff should be allowed to present its defense of arson; 3) Whether or not defendants' have complied with their obligation to answer questions under oath should be submitted to a jury as a question of fact; 4) Defendants should be allowed to reinstate their pleading of vexatious delay and to submit that claim to a jury, and 5) That paragraphs 12, 13, 14, 15 and 16 of plaintiff's second amended answer were properly stricken. The judgment is reversed and the cause is remanded for trial in accordance with these directions. It is so ordered.

PREWITT, P.J., and FLANIGAN and MAUS, JJ., concur.