# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1400

_____

Dale Neidenbach; Kim Neidenbach

*Plaintiffs - Appellants*

v.

Amica Mutual Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 22, 2016
Filed: November 16, 2016

_____

Before WOLLMAN, BRIGHT, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Dale and Kim Neidenbach appeal the district court's grant of summary judgment in favor of Amica Mutual Insurance Company (Amica). The Neidenbachs allege that a fire caused significant damage to their house and personal property. They contend that their insurance policy from Amica covered the damage, but that

Amica refused to pay the claim. The district court[1] concluded that the insurance policy was void under its terms because the Neidenbachs made material misrepresentations during the claims process. Accordingly, the court granted summary judgment in favor of Amica. We affirm.

## I. Background

The Neidenbachs were named insureds on a homeowner insurance policy issued by Amica. The effective dates of the policy were May 8, 2012, through May 8, 2013. The policy provided, in part,

**R. Concealment or Fraud**

We provide coverage to no **insureds** under this policy if, whether before or after a loss, an **insured** has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

On October 10, 2012, either one or two fires occurred at the Neidenbachs' property. There was substantial damage to the house and the personal property within. After the fire, the Neidenbachs claimed coverage under the insurance policy. They submitted a Sworn Statement in Proof of Loss (Proof of Loss) to Amica, in which they claimed that their house and garage suffered a total loss. They sought the

---

[1]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

limits of their policy: $375,000 in damage to their house and garage, and $262,500 in damage to their personal property. Attached to the Proof of Loss was an inventory of the Neidenbachs' personal property, which assigned a value to each item allegedly lost in the fire. According to the inventory, the total value of the personal property lost in the fire was over $300,000, exceeding the policy limit.

Approximately a year before the fire, the Neidenbachs filed for Chapter 13 bankruptcy. In their bankruptcy petition, the Neidenbachs declared—under penalty of perjury—that they jointly owned only $7,000 worth of household goods and furnishings, clothing, furs, jewelry, firearms, hobby equipment, and other personal property. The Neidenbachs do not dispute that they did not accumulate $255,500 worth of personal property between filing the bankruptcy petition and submitting the Proof of Loss.

In April 2013, before Amica made its final coverage determination, the Neidenbachs filed the present suit in Missouri state court, seeking reimbursement for the fire loss. Amica removed the case to federal court, and asserted a counterclaim for recovery of advances it had made to the Neidenbachs under the policy. After the close of discovery, Amica moved for summary judgment, arguing in part that the insurance policy was void under its "Concealment or Fraud" provision because the Neidenbachs misrepresented the value of their personal property in their Proof of Loss.

The district court concluded that no reasonable jury would be able to reconcile the difference between the value of the personal property the Neidenbachs reported as lost in the fire and the value of personal property they reported in their bankruptcy petition a year earlier. Accordingly, the court determined that the insurance policy was void as a matter of law, and granted summary judgment to Amica on the Neidenbachs' claims. The Neidenbachs appeal that determination. We have jurisdiction under 28 U.S.C. § 1291.

## II. Discussion

We review de novo the district court's grant of summary judgment, viewing the evidence in the light most favorable to the nonmovants. Carpenter v. Gage, 686 F.3d 644, 648 (8th Cir. 2012). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Neidenbachs argue that the district court erred in granting summary judgment to Amica because there is a genuine issue of material fact as to whether they intentionally made material misrepresentations on their Proof of Loss. In the alternative, they argue that the insurance policy is severable, and that the alleged misrepresentations void only the portion of the policy covering their personal property. The parties agree that Missouri substantive law applies.

### A. Intentional misrepresentation

The Neidenbachs argue that there is a genuine dispute of material fact as to whether they intentionally misrepresented the value of their personal property in the Proof of Loss. The Neidenbachs reported owning only $7,000 worth of personal property in their bankruptcy petition. However, in their Proof of Loss, they sought reimbursement of $262,500 worth of personal property—a difference of $255,500. As the district court noted, several items listed in the Proof of Loss were not listed in the bankruptcy petition. And many of the items that were listed in the bankruptcy petition were assigned a much higher value in the Proof of Loss than in the petition.

"[I]n the absence of contrary proof," a verified bankruptcy petition is assumed to be "a true and accurate representation of [the petitioner's] personal property." Liberty Mut. Fire Ins. Co. v. Scott, 486 F.3d 418, 423 (8th Cir. 2007). Thus, to

survive summary judgment, the Neidenbachs were required to produce evidence from which a reasonable jury could find that "the figures [the Neidenbachs] listed in [their] bankruptcy petition were inaccurate," that "the insurance proof of loss amounts resulted from mistake or were otherwise inadvert," or that some other circumstance accounted for the discrepancies between the bankruptcy petition and the Proof of Loss. Id. According to the Neidenbachs, the discrepancies are attributable to three circumstances.

First, the Neidenbachs contend that they used different methods of valuing their property in the Proof of Loss and the bankruptcy petition. The Neidenbachs state in their affidavits that their bankruptcy attorney instructed them to use the "garage sale value" of their personal property in their bankruptcy petition. For the Proof of Loss, on the other hand, they used the "fair market value" of their personal property. According to the Neidenbachs, the former refers to "what a willing buyer would pay," while the latter refers to "what a willing buyer would pay AND what a willing seller would sell it for." The Neidenbachs contend that this explanation was sufficient to create a genuine issue of material fact as to whether they intentionally overstated the value of their personal property on the Proof of Loss.

We disagree. The facts of this case are closely analogous to those of Scott. In Scott, an insured claimed she had lost $93,077.19 worth of personal property in a fire, less than a year after she listed only $830 worth of personal property in her bankruptcy petition. 486 F.3d at 422. She claimed the discrepancy resulted from the different methods she used to calculate the value of her property: She reported the "actual value" of her property on the bankruptcy petition, and the "replacement cost" of her property on her insurance proof of loss. Id. at 423. Applying Missouri law, we concluded that—even assuming the insured was telling the truth about how she calculated the value of her property—"the vast difference in the two values is still too great to be reconciled based on the record before us." Id. Here, the $255,500 discrepancy between the Neidenbachs' Proof of Loss and bankruptcy petition is even

-5-

greater than the $92,247.19 discrepancy in <u>Scott</u>. And the explanation the Neidenbachs offer is no more plausible than the one offered by the insured in <u>Scott</u>; if anything, the difference between garage sale value and fair market value is likely to be less than the difference between actual value and replacement cost. Accordingly, no reasonable jury could conclude that the difference between garage sale value and fair market value accounts for a $255,500 discrepancy between the Proof of Loss and the bankruptcy petition.

Next, the Neidenbachs point to Dale Neidenbach's deposition testimony that their bankruptcy attorney "asked us what we declared on our personal property tax return and that's the information we gave him" to fill out the bankruptcy petition. As the court understands the argument, the Neidenbachs suggest that they were required to list only some items of personal property on their personal property tax return, and that, therefore, their bankruptcy petition likewise did not include all of their personal property.

But the Neidenbachs have produced no evidence showing what items of personal property they omitted from their personal property tax return. Nor have they cited any authority explaining what personal property is required to be reported on a personal property tax return. Thus, even assuming Dale Neidenbach's deposition testimony was accurate, we can only speculate as to whether the Neidenbachs owned personal property that was not listed on their personal property tax return. This evidence fails to show more than "some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87 (1986).

Finally, the Neidenbachs argue that because their property suffered a total loss, they were legally entitled to seek coverage up to the policy limits, regardless of their property's true value. Under Missouri law, where an insured's personal property is totally destroyed, the measure of damages is the "value fixed at the date of the policy, less depreciation from that date to time of the fire." <u>Duckworth v. U.S. Fidelity &</u>

Guar. Co., 452 S.W.2d 280, 285 (Mo. Ct. App. 1970); Mo. Rev. Stat. § 379.160. The insured bears the burden of proving that no depreciation has occurred. Duckworth, 452 S.W.2d at 285. The Neidenbachs' policy limit for personal property was $262,500; thus, they argue, their claim for a $262,500 loss to personal property was not an intentional misrepresentation.

However, as the district court noted, there is no evidence that the Neidenbachs valued their personal property based on their insurance policy limit. Rather, they both state in their affidavits that they calculated the value of their personal property by determining the fair market value of each item. And, in fact, the total value of the personal property listed in the Proof of Loss far exceeds the policy limit. Accordingly, this argument fails to generate a genuine issue of material fact as to whether the Neidenbachs intentionally misrepresented the value of their personal property in their Proof of Loss.

The Neidenbachs have produced no evidence that they computed the value of their personal property incorrectly on their bankruptcy petition, or that they excluded personal property from the petition because they believed it had no resale value. Cf. Merseal v. Farm Bureau Town & Country Ins. Co. of Mo., 396 S.W.3d 467, 472–73 (Mo. Ct. App. 2013) (concluding the jury's verdict in favor of the insureds was supported by sufficient evidence where the insureds explained a discrepancy between their insurance claim and bankruptcy petition with evidence that they used a do-it-yourself software program to file for bankruptcy, computed the value of their personal property incorrectly, and excluded some property because they believed it had no resale value). Similarly, the Neidenbachs have produced no evidence that they made mistakes on their Proof of Loss. Cf. Young v. Allstate Ins. Co., 685 F.3d 782, 785–86 (8th Cir. 2012) (concluding there was a genuine issue of material fact as to whether the insureds intended to deceive the insurance company where the insureds explained a discrepancy between their initial insurance claim and a revised insurance claim with evidence that their daughter prepared the initial claim, and that they did

not realize it contained errors until later).  Rather, as in <u>Scott</u>, the only reasonable inference from the record before us is that the insureds intentionally made material misrepresentations in their Proof of Loss.

The Neidenbachs make two additional arguments in opposition to summary judgment (though it is somewhat unclear whether these arguments relate to the misrepresentations in the Proof of Loss, or to other misrepresentations the Neidenbachs allegedly made).  Initially, the Neidenbachs argue that Amica has failed to show that their misrepresentations were "material" because Amica has not shown that it was actually prejudiced by the misrepresentations.  However, we agree with the district court that the misrepresentations on the Proof of Loss were material because an accurate inventory of the property destroyed by the fire was necessary for Amica to make a coverage determination.  See <u>Myers v. Farm Bureau Town & Country Ins. Co. of Mo.</u>, 345 S.W.3d 341, 349 (Mo. Ct. App. 2011) ("[T]he prejudice to [the insurance company] was obvious: the company was being asked to pay a fraudulent claim.").  Next, the Neidenbachs argue in general terms that Amica relied on inadmissible hearsay in support of its motion for summary judgment.  But they do not identify any particular evidence the district court erred in considering.  Thus, this argument is not sufficiently developed for appellate review, and we decline to address it.

## B. Severability

Before oral argument, we instructed the parties to be prepared to address whether the misrepresentations as to the value of the personal property necessarily voided coverage for the dwelling.  The parties submitted supplemental briefing on the issue.  The Neidenbachs argue that even if the personal property coverage is void because of the misrepresentations in the Proof of Loss, the coverage for the house and garage is not.  Amica, on the other hand, argues that the policy is void in its entirety.

-8-

In Missouri, the interpretation of a contract is a question of law. Schmitz v. Great Am. Assur. Co., 337 S.W.3d 700, 705 (Mo. banc 2011). In interpreting insurance contracts, Missouri courts apply "the meaning that would be understood by an ordinary person of average understanding purchasing the insurance." Id. at 705–06. Any ambiguities are resolved in favor of the insured. Id. at 706. But an unambiguous policy "will be enforced according to its terms." Id.

> [w]here the policy separates the property insured into distinct classes and specifies the amount of insurance upon each, the contract is severable into as many contracts as there are separate classes of property insured on separate valuations, and the fact that the policy may be void as to the insurance on one class will not necessarily impair its validity as to another.

Beckon, Inc. v. AMCO Ins. Co., 616 F.3d 812, 816 (8th Cir. 2010) (quoting Fager v. Commercial Union Assurance Co., 176 S.W. 1064, 1065 (Mo. Ct. App. 1915)).

However, the parties agree that under Missouri law, where an insured breaches an insurance policy by committing a misrepresentation as to one class of coverage, such misrepresentation may void the entire policy, even if the policy would otherwise be severable. See Childers v. State Farm Fire & Cas. Co., 799 S.W.2d 138, 141 (Mo. Ct. App. 1990) ("Under Missouri case law a misrepresentation as to a portion of the loss may void coverage to the entire claim."); Scott, 486 F.3d at 423 (finding that where an insured made a material misrepresentation as to the value of her personal property, her entire policy was voided); Patterson v. State Auto. Mut. Ins. Co., 105 F.3d 1251, 1253 (8th Cir. 1997) (concluding that a jury instruction was appropriate under Missouri law where it "allowed forfeiture of all benefits even if the jury found that [the insured] made a material misrepresentation with regard to only one type of coverage provided by the policy").

As the dissent has thoroughly and persuasively explained, there are Missouri state court cases that have reached the opposite conclusion. See, e.g., State ex rel. Burton v. Allen, 278 S.W. 772, 775 (Mo. 1925) (concluding that a jury instruction "declaring that a false and fraudulent representation . . . avoids the policy as to other articles insured, is in conflict with the decisions of this court"). Nonetheless, "[a]bsent an intervening opinion by a [state] court," we are bound by a prior panel's interpretation of state law. Washington v. Countrywide Home Loans, Inc., 747 F.3d 955, 958 (8th Cir. 2014); see also Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) ("It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel." (quoting Owsley v. Luebbers, 281 F.3d 687, 690 (8th Cir. 2002))). Accordingly, our decisions in Patterson and Scott control our analysis.[2]

Amica argues that even if the policy might otherwise be severable—which it does not concede—it is not severable in this instance because the Neidenbachs made material misrepresentations during the claims process. The Neidenbachs, on the other hand, argue that this exception to the general severability rule applies only where the language of the policy clearly provides that the entire policy is voided by

_____

[2]It is true that in 1939, an Eighth Circuit panel concluded that, under Missouri law, "[t]he doctrine of separability does not apply where the fraud or untrue representation affects *all* parts of the insurance contract." Hesselberg v. Aetna Life Ins. Co., 102 F.2d 23, 26 (8th Cir. 1939) (emphasis added). And, generally, "when faced with conflicting panel opinions, the earliest opinion must be followed 'as it should have controlled the subsequent panels that created the conflict.'" Mader, 654 F.3d at 800 (quoting T.L. ex rel. Ingram v. United States, 443 F.3d 956, 960 (8th Cir. 2006)). But in this instance, we conclude that Patterson and Scott implicitly overruled Hesselberg on the basis of an intervening state court opinion. See Scott, 486 F.3d at 423 (citing Childers, 799 S.W.2d at 141); Patterson, 105 F.3d at 1253 (same). Because a prior panel's interpretation of state law is binding only in the absence of an intervening state court opinion, Patterson and Scott were not obligated to follow Hesselberg. But until a Missouri state court issues an intervening opinion on this point, we are obligated to follow Patterson and Scott.

-10-

misrepresentation. The Neidenbachs contend that the Concealment or Fraud provision of the policy is ambiguous on that point, because it is unclear whether a misrepresentation voids the entire policy, or merely the class of coverage to which the misrepresentation relates. Thus, according to the Neidenbachs, we are required to construe the provision against the insurance provider, and hold that only the personal property portion of the insurance is void.

As described above, the Neidenbachs' insurance policy states, "We provide coverage to no **insureds** under this policy if, whether before or after a loss, an **insured** has . . . [i]ntentionally concealed or misrepresented any material fact or circumstance . . . ." We find that this provision unambiguously refers to the entire policy, not just the personal property coverage. To begin with, the cover page of the insurance policy document bears the title "Homeowners Policy." And the policy consistently uses phrases such as "this policy," "your policy," and "the policy" to refer to the entire policy, not just to specific classes of coverage. For example, one portion of the policy reads, "We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy." Thus, an ordinary person of average intelligence purchasing insurance would understand the phrase "this policy" to refer to the entire policy. And the fact that the policy might, in some circumstances, be regarded as severable under Missouri law does not change this plain meaning.

Accordingly, we conclude as a matter of law that because the Neidenbachs intentionally made material misrepresentations on the Proof of Loss, their entire insurance policy is void.

### III. Conclusion

We affirm the judgment of the district court.

-11-

BRIGHT, Circuit Judge, concurring in part and dissenting in part.

I concur in affirming the district court's decision to void the personal property coverage of the Neidenbachs' homeowner's policy. I believe Liberty Mutual Fire Insurance Co. v. Scott, 486 F.3d 418 (8th Cir. 2007), controls the outcome in this case. I read Scott as holding that a large discrepancy between an insured's valuation of personal property in a bankruptcy proceeding and the valuation of the same property in an insurance claim – absent evidence the bankruptcy petition was inaccurate or the amounts claimed in the insurance proof of loss resulted from mistake or inadvertence – establishes a material misrepresentation as a matter of law. See id. at 423. As the court notes, the discrepancy between the two values is even larger here than it was in Scott.

I do not believe, however, that a misrepresentation on the personal property coverage necessarily voided the Neidenbachs' separate coverage for their dwelling. I therefore respectfully dissent from that portion of our opinion, and would reverse the district court's decision to void the coverage on the dwelling.

In cases dating back as far as 1852, the Missouri Supreme Court has developed a well-established rule of treating each risk insured under a multi-coverage policy as a separate insurance policy. This rule is referred to as the doctrine of separability. Under the doctrine of separability, a misrepresentation as to one covered risk does not necessarily void coverage as to another covered risk unless the insurer shows the misrepresentation was also material to that specific risk. Amica Mutual did not establish the misrepresentations the Neidenbachs made with respect to their personal property were material to the separate coverage for the dwelling. As a result, Amica Mutual was not entitled to summary judgment on the Neidenbachs' claim for the loss of their home.

The doctrine of separability was first discussed by the Missouri Supreme Court in Loehner v. Home Mutual Insurance Co., 17 Mo. 247 (Mo. 1852) (1852 WL 4280). There the insured made a claim under a policy which covered both personal property and a building after a mob destroyed the building, a piano, and some household furniture. The insurer sought to void coverage for both the building and the personal property on the grounds that the insured had not disclosed certain material information in the application for the policy, namely, the existence of a deed of trust upon the building, the fact that the building was to be used as a "bawdy house," and the fact that the insured sold wine on the premises. Id. at 250.

Although the court held the omissions in the application were warranties which would void the coverage for the building, the court used a different analysis for the separate coverage on the personal property. As to that issue, the court said the coverage would be void only if the insurance company could show the omissions amounted to misrepresentations that were material to the specific risk of insuring the personal property:

> With respect to the furniture and piano, although they may be regarded as being insured in the building covered by the insurance, yet, because the statute arbitrarily avoids the policy as to the building, for the want of the disclosure of a fact which did not at all affect the risk of the insurer, we cannot come to the conclusion that the policy was likewise void as to the furniture and piano. The validity of the policy, as to them, will depend upon the answer to the question, whether the concealment or suppression of the facts that the house was incumbered by a deed of trust, was used as a bawdy house, and that wines were sold and drank, as stated in the evidence, did materially enhance the risk of the insurers, or would a knowledge of them have induced a refusal to insure. In relation to this matter, the doctrine of warranties in policies of insurance has no application, but the ground on which the invalidity of the contract of insurance is based, is a concealment or suppression of facts material to the risk.

-13-

Id. at 256-57.

The Missouri Supreme Court further developed this principle in 1894, in Trabue v. Dwelling House Insurance Co., 25 S.W. 848 (Mo. 1894). As is the case here, Trabue involved a loss by fire and an insured's claim for both personal property and a dwelling under a single policy. The policy had a provision which purported to void the *entire* policy if there was any change in the interest or title to the home. Prior to the fire, the insured died leaving a wife and four children and a will which divided up the interests in the home among all five of them, thus changing the interest or title to the home. Relying upon the provision purporting to void the entire policy, the insurance company sought to void both the coverage for the home and the personal property. Id. at 848.

Referring to its decision in Loehner, the Missouri Supreme Court rejected the insurer's position and reaffirmed that – despite the policy language purporting to void the entire policy if there was any change in interest or title to the home – the separate coverage for the personal property remained valid. The court interpreted the policy's use of the word "entire" to refer only to the portion of the policy affected by the change in title:

> No reason is given here why a forfeiture should be enforced, except the insertion of the word "entire" into the policy. The risk was not increased. The premiums were taken, kept, and enjoyed for insurance on the personal property. The policy as to the house was avoided, doubtless, through the ignorance of the insured; but they have violated no condition as to this personal property. Holding, then, as we do, that this was a divisible contract, it results that the legal effect is the same as if two distinct and separate policies were issued, and, so reading the contract, we do not reject the word "entire" at all, but apply it to that policy, or portion of this policy, which the insured has forfeited by the change of title to which alone this clause refers [i.e., the coverage on the

-14-

home]; and it avoids that "entire" policy, and not the policy in which no condition or warranty has been broken [i.e., the coverage on the personal property].

Id. at 850.

In describing the holding in Loehner, the court said:

As early as the case of Loehner v. Insurance Co., 17 Mo. 247, it was held by this court that where a firm obtained insurance upon a storehouse and a stock of goods therein in separate amounts, and the insurance on the house was avoided because the interest in the house was incorrectly described in the application, the policy was not vitiated as to the goods; in other words, this court then held that such a contract was divisible.

Id. at 849.

The Missouri Supreme Court also discussed the sound policy reasons behind dividing a multi-coverage policy into separate policies when the insurer calculates each risk separately:

When one applies for distinct and separate insurance, a part on real estate, a part on personal property, he can require two separate policies. The accidental circumstance that for convenience merely they are included in one policy does not merge them into one. If the goods alone were destroyed, the terms of the policy applying to them alone could be made the basis of recovery. . . . There is nothing to indicate the company would not have assumed the risk on the house without taking one also on the goods, nor vice versa.

Id.

The rule of law announced by the Missouri Supreme Court in <u>Loehner</u> and <u>Trabue</u> was articulated by the Missouri Court of Appeals in 1915 in <u>Fager v. Commercial Union Assurance Co.</u>, 176 S.W.1064 (Mo. Ct. App. 1915). In <u>Fager</u>, the court said:

> Where the policy separates the property insured into distinct classes and specifies the amount of insurance upon each, the contract is severable into as many contracts as there are separate classes of property insured on separate valuations, and the fact that the policy may be void as to the insurance on one class will not necessarily impair its validity as to another.

<u>Id.</u> at 1065 (citing <u>Loehner</u>, <u>Trabue</u>, <u>Koontz v. Hannibal Savings & Ins. Co.</u>, 42 Mo. 126 (Mo. 1868); and <u>Crossan v. Pa. Fire Ins. Co.</u>, 113 S.W. 704 (Mo. Ct. App. 1908)).

<u>Koontz</u>, one of the cases <u>Fager</u> cites, also involved a misrepresentation claim under a policy covering both a building (a stable) and personal property (horses and other personal property located in the stable) from loss by fire. The insured misrepresented in the application that he owned the stable outright, when it was actually encumbered by a deed of trust. 42 Mo. at 128. The question presented was whether that misrepresentation also voided the separate coverage on the personal property. The court followed the rule announced in <u>Loehner</u> where "it was held that although a failure to disclose an encumbrance would avoid a policy on a house insured, yet it would not avoid it as to furniture insured in the same policy, but separately appraised, *unless the fact concealed was shown to be material to the risk*." <u>Id.</u> at 129 (emphasis added). The court then held that the misrepresentation about the encumbrance on the building did not void the separate coverage for the personal property, because the "other property was separately valued and appraised, and there is nothing to show that the representation as to encumbrances on the stable formed an inducement to the execution of the policy covering the personal property." <u>Id.</u> at 130; <u>see also</u> <u>State ex rel. Burton v. Allen</u>, 278 S.W. 772, 775 (Mo. 1925) (agreeing

with a party's argument that a jury instruction "declaring that a false and fraudulent representation that plaintiff was the owner of the stock described avoids the policy as to other articles insured, is in conflict with the decisions of this court" and holding that alleged misrepresentations as to number of horses and mules separately valued under a policy that also insured vehicles and harnesses did not void the separate coverage on the vehicles and harnesses).

The doctrine of separability developed by the Missouri Supreme Court in these early cases is still the law in Missouri. See, e.g., Beckon v. Amco Ins. Co., 616 F.3d 812, 817 (8th Cir. 2010) (applying the doctrine of separability under Missouri law and holding that a lack of insurable interest on an insured building did not necessarily void separate coverage for personal property); Consumer's Money Order Corp. of Am., Inc. v. New Hampshire Ins. Co., 386 S.W.2d 674, 677 (Mo. Ct. App. 1964) ("If the character of the risks assumed is such that what affects the risk on one item does not affect the risk on the others the parties must have intended that the policy should be regarded as severable and divisible, and any warranty the breach of which could only affect one item will be deemed directed to that item and not to the policy as a whole."); Allstate Indem. Co. v. Rice, No. 4:12-CV000178, 2013 WL 1314195, at *2 (W.D. Mo. March 28, 2013) ("Missouri law holds that where there exists a multicoverage policy, each coverage may be analyzed as a separate contract of insurance. See Trabue v. Dwelling House Ins. Co., 121 Mo. 75 (1894) (holding an insurance contract to be divisible to the effect of having two distinct and separate policies regarding coverage of the dwelling house and coverage of personal property).").

In Hesselberg v. Aetna Life Insurance Co., we specifically noted that the doctrine of separability applies under Missouri law unless the "untrue representation affects *all* parts of the insurance contract." 102 F.2d 23, 26 (8th Cir. 1939) (emphasis added). In other words, consistent with what the Missouri Supreme Court has said time and again, we recognized that a particular misrepresentation must be material to

-17-

a specific insured risk in order to void that specific coverage in a multi-coverage policy.

My colleagues conclude we are bound by Patterson v. State Automobile Mutual Insurance Co., 105 F.3d 1251 (8th Cir. 1997). I disagree. True, Patterson held that "both federal and state courts applying Missouri law have specifically stated that Missouri common law permits forfeiture . . . of all benefits even if the jury found that Mr. Patterson made a material misrepresentation with regard to only one type of coverage provided by the policy[.]" Id. at 1253. But four of the five cases to which Patterson referred were fraud cases, not misrepresentation cases, and were decided on fraud principles. See Vitale v. Aetna Cas. & Surety Co., 814 F.2d 1242, 1247-48 (8th Cir. 1987) (involving alleged arson where the insurer denied coverage on the basis of "fraud in the filing of an insurance claim" under a policy which barred all coverage "in the case of any fraud or false swearing by the insured relating thereto"); Farm Bureau Town & Country Ins. Co. v. Crain, 731 S.W.2d 866, 875 (Mo. Ct. App. 1987) (involving a "false swearing" fraud case); Arel v. First Nat'l Fire Ins. Co., 190 S.W. 78, 80 (Mo. Ct. App. 1916) (involving a "false and fraudulent swearing" case decided on fraud principles); Hall v. W. Underwriters' Ass'n, 81 S.W. 227, 227 (Mo. Ct. App. 1904) (same).[3]

As Amica Mutual is quick to note, however, Missouri law distinguishes between fraud and misrepresentation. Amica Mutual argues "Missouri courts consistently hold that an insurer is not required to prove the elements of fraud in order

---

[3]To the extent the result in Vitale was based on the policy's misrepresentation provision, as opposed to its fraud provisions, the case is distinguishable from the circumstances present here because the "destruction of the [entire] property by arson and the amount, if any, of [the insured's] business interruption damages [were] material to the insurance contract as a whole." 814 F.2d at 1250. Here, Amica Mutual has not yet shown that the misrepresentations the Neidenbachs made with respect to their personal property were material to the separate coverage on the dwelling.

-18-

to avoid coverage [due to a misrepresentation]." Appellee's Br. at 15 (citing Emp'rs. Mut. Cas. Co. v. Tavernaro, 4 F. Supp. 2d 868, 870 (E.D. Mo. 1998)). Here, Amica Mutual seeks to void coverage relying upon the policy's misrepresentation clause, without proving the elements of fraud. Amica Mutual therefore cannot rely upon cases decided under fraud principles in this misrepresentation case. Similarly, Patterson's application of fraud cases to a misrepresentation claim was unsound.

Although the fifth case to which Patterson referred was a misrepresentation case, Childers v. State Farm Fire & Casualty Co., all the Missouri Court of Appeals said in Childers was that "[u]nder Missouri case law a misrepresentation as to a portion of the loss *may* void coverage to the entire claim." 799 S.W.2d 138, 141 (Mo. Ct. App. 1990) (emphasis added). That statement is true, and not inconsistent with the Missouri Supreme Court's well-entrenched separability doctrine, where an insured *may* void all parts of a policy by showing the misrepresentation was material to each specific insured risk, but *may not* without making that requisite showing. To be consistent with Missouri Supreme Court decisions, the Missouri Court of Appeals' use of the word "may" in Childers must be viewed as conditional – allowing a misrepresentation to void an entire policy only when the insurer makes the requisite showing required by the separability doctrine. Instead, our court reads the word "may" as permissive – allowing an insured to void all coverage under all circumstances. Where there is an interpretation of Childers that can be harmonized with Missouri Supreme Court decisions, we should not adopt an inconsistent one.

Every case cited in both Patterson and Vitale were decisions from the Missouri Court of Appeals, not the Missouri Supreme Court. If there is a conflict between the "false swearing" fraud cases decided by the Missouri Court of Appeals (or the Childers case) and the separability doctrine/misrepresentation cases decided by the Missouri Supreme Court, we are bound to follow the latter. See Smith v. ConocoPhillips Pipe Line Co., 801 F.3d 921, 925 (8th Cir. 2015) ("In deciding

matters of state law, we are bound by the decisions of the state's highest court.") (internal quotation marks and citation omitted).

Most importantly, the holding in Patterson conflicts with our recognition in Hesselberg that Missouri's doctrine of separability applies unless the "untrue representation affects *all* parts of the insurance contract," i.e., the insurer shows the misrepresentation is material to each specific insured risk. 102 F.2d at 26 (emphasis added). Hesselberg was decided prior to Patterson, and thus Hesselberg should control our decision in this case and not vice versa. See Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) ("[W]hen faced with conflicting panel opinions, the earliest opinion must be followed as it should have controlled the subsequent panels that created the conflict.") (internal citation and quotation marks omitted). In addition, correctly interpreting the word "may" in Childers consistent with controlling Missouri Supreme Court decisions does not result in any intervening change in state law that would allow Patterson (or Scott) to implicitly overrule Hesselberg. Finally, Childers should not be considered an intervening state court decision in conflict with Hesselberg in any event, because it is not a decision from the Missouri Supreme Court. See Beckon, 616 F.3d at 820 (explaining that a federal court must follow an intervening state court decision that cannot be harmonized with a prior federal appellate decision "[w]hen the *highest court* of a state disposes of an issue of state law contrary to the resolution of the issue theretofore suggested by a federal court") (emphasis added) (internal citation and quotation marks omitted). As a result, the Patterson panel was not at liberty to use Childers to implicitly overrule Hesselberg's correct application and interpretation of the Missouri Supreme Court's well-developed separability doctrine.

Amica Mutual has not yet shown that any misrepresentations the Neidenbachs made with respect to their personal property were material to the separate risk of insuring their dwelling. I therefore would reverse the district court's grant of

summary judgment with respect to the separate coverage on the dwelling, and remand this case for further proceedings.

_____